CHARLES SALISBURY, PROSECUTOR, v. BOROUGH OF RIDGEFIELD, DEFENDANT.

Argued May 6, 1948—Decided August 18, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Winne & Banta (Edward G. Evertz,* of counsel).

For the defendant, *Nicholas S. Schloeder.*

The opinion of the court was delivered by

HEHER, J. *Certiorari* was granted to review a resolution of the governing body of the defendant municipality adopted May 6th, 1947, denying prosecutor's application for a permit to install three gasoline tanks and pumps on lands situate at the southeast corner of Shaler Boulevard and Ray Avenue, in the borough, for use in the operation of a motor vehicle service station.

The *locus* was situate in a "Business" district established by the local zoning ordinance passed on May 8th, 1939, which by its terms barred "public garages" from such zones, defined as "a building or space, other than a private or community garage, for the storage of motor vehicles and at which filling station service, the sale of accessories, cleaning or repairing of any kind of motor vehicle are permitted." The application for the permit was made on February 1st, 1947. It followed the issuance of a permit by the local building inspector for the construction of a building on the lands designed for use as a gasoline filling station, "pursuant" to the "provisions of the Building Code." Prosecutor acquired an option to purchase the premises on January 27th, 1947. He applied for the building permit on the 28th; and it was issued the following day. On February 17th following, he acquired title to the lands under the option. By two separate and distinct amendments of the zoning ordinance, introduced on February 18th, 1947, and adopted on the ensuing March 4th, the use of lands in residence and business zones as "a gasoline filling or oil station or a motor vehicle service station" was forbidden, and the permit fee was raised from $200 to $2,500 for each pump; and by a further amendment adopted on June 17th, 1947, all of Shaler Boulevard was zoned for residential uses and Ray Avenue was continued as a residence area.

But there is also an ordinance, adopted on May 7th, 1939, regulating and controlling "the installation of gasoline tanks and pumps and the maintenance of gasoline service stations;" and it was under this ordinance that the application in question was made. It is therein provided that no gasoline tank or pump, including such as may be intended to be used "exclusively for private purposes," shall be installed within the borough without a permit issued by the borough clerk under the sanction of the borough council, which may be refused if the council "deems such refusal to be for the general welfare or public safety or convenience."

The council found that, although "the premises are zoned for business," the adjacent lands, with the exception of one nonconforming use, are residential in character and in fact; that the proposed use will give rise to greater traffic and fire hazards and inconveniences, with a consequent deterioration of property values; that the area is traversed by school children going to and from the seat of instruction, and the suggested use would be perilous to them; and that for all of the circumstances—these and others recited in the resolution—it was deemed "to be for the general welfare, public safety and convenience of the public" that the permit be refused.

First, it is urged that the amended regulation is arbitrary and unreasonable, in that the prohibition against gasoline service stations extends throughout the borough except the section reserved for "industrial" uses. The point is not well taken.

A business or trade is affected with a public interest, and thus within the range of the police power, if it is in character such as is subject to control for the common good. Gasoline service stations are in this category, for the use involves the public safety, comfort and convenience in several major aspects. These factors enter largely into the determination of the location and, in some measure, the physical characteristics of the structures; and reasonable regulation of such land uses, guided by these considerations, is therefore embraced within the police power. Due regard may be had for the surroundings in the service of the public safety and the general convenience and welfare. Consideration is to be given,

for example, to fire and sidewalk cross-over traffic hazards as well as the public need for the service. *Schnell* v. *Township Committee of Ocean,* 120 *N. J. L.* 194; *First Church of Christ, Scientist* v. *Board of Adjustment of Newark,* 128 *Id.* 376. There is no showing here that the containment of motor vehicle service stations within the area zoned for industrial uses is a disservice to public necessity or convenience or the common welfare; certainly, the prohibition of such use in residential districts, where traffic and fire hazards have an important bearing, is in no sense arbitrary or unreasonable. The presumption of validity indulged in the case of a statute applies with equal force to the exercise of the local legislative power; and this presumption has not been overthrown in the case at hand. Whether the regulation be viewed as an exercise of the constitutional and statutory zoning power or the exercise of the general police power apart from zoning directed to a use requiring special treatment because of its peculiar characteristics, it is entirely reasonable and appropriate to the service of a legitimate public interest. Debatable questions as to reasonableness in such cases are not for the courts but for the legislative tribunal. *Vide Sproles* v. *Binford,* 286 *U. S.* 374; 52 *S. Ct.* 581; 76 *L. Ed.* 1167. We do not substitute our judgment as to policy for the discretion of the local legislative body, reasonably exercised; the judicial function is the correction of arbitrary and unreasonable action and abuse of power.

It is suggested also that the regulation is deficient in an adequate norm or standard of conduct governing the council in the exercise of reserved power. But such is obviously not the case. The standard or criterion of action is expressly declared to be "the general welfare or public safety or convenience."

Next, it is said that, "in view of the building permit validly granted," the issuance of the tank and pump permits under the cited ordinance "was purely a regulatory and ministerial duty on the part of the governing body," and it was not open to that tribunal to vitiate the building permit by refusing the tank and pump permits where prosecutor "had proceeded with its construction and had made commitments

to erect the gasoline station." The case of *Freeman* v. *Hague,*
106 *N. J. L.* 137 is cited for the proposition that "the build-
ing permit, once granted and under which construction has
proceeded in reliance thereon, may not be revoked subse-
quently." We find no merit in this point.

The proofs do not satisfy us that prosecutor made substan-
tial expenditures on the faith of the building permit. More-
over, he was aware that without tanks and pumps he could
not use the premises as a gasoline filling station, and he made
the expenditures fully cognizant of the risks involved. He
was not misled to his injury. It is not within the power of
the landowner to nullify the ordinance regulating the installa-
tion of tanks and pumps by procuring the building permit
and entering upon the construction work and then demanding
the tank and pump permits as a matter of absolute right
grounded in estoppel.

Lastly, it is contended that the amendment of the ordinance
prescribing a fee of $2,500 for each pump is unreasonable
and confiscatory—citing *Gurland* v. *Kearney,* 128 *N. J. L.*
22. But we need not determine the point.

If it be conceded *arguendo* that the amendment is de-
ficient in this regard, the pertinent provisions of the original
ordinance stand unimpaired. The amendment was a separate
and distinct enactment; and if it be unconstitutional for the
reason stated, it is a nullity and therefore works no change
in the existing ordinance, even though it embodied an express
repealer of all ordinances and parts of ordinances inconsistent
therewith. A statute "cannot be recalled or restricted by
anything short of a constitutional enactment." *Davis* v.
*Wallace,* 257 *U. S.* 478; 42 *S. Ct.* 164; 66 *L. Ed.* 325. In
such circumstances, the pre-existing statute stands "as the
only valid expression of the legislative intent." *Frost* v.
*Corporation Commission,* 278 *U. S.* 515; 49 *S. Ct.* 235; 73
*L. Ed.* 483. There is no indication here of an intention that
the repealer shall be effective at all events. Certainly, the
requirement of a permit for the installation of tanks and
pumps remains unaffected.

The writ of *certiorari* is dismissed, with costs.

Mr. Justice Wachenfeld dissents.