17 N.J. Super. 153 (1951)
85 A.2d 317
WALTER B. FRED, CHARLES DE WOLF, JAMES J. O'CONNOR, JOHN KLEIN, MARIA DREISBACH, THEODORE C. HANDWERG, HELEN WATSON, EDWARD YOUNGMAN, HAROLD SUNDEN, DOMINICK COPPOLO, RALPH COPPOLO, ANTHONY A. COPPOLO, CHRIS AND ANGELA CLASEN, FRANK HESS, WILLIAM HECKEL, M.M. COFFEY, FRED KRUGER, ROSE KOCH, RONALD F. ROTH, HOMER PURGOLD, OTTO LEIN, GENEVA C. LEIN, BLANCHE C. OCHSE, EVA OGLE, AND STEPHEN MICHALON, PLAINTIFFS,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF OLD TAPPAN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 27, 1951.
*155 Messrs. Major & Carlsen (Mr. James A. Major appearing), attorneys for plaintiffs.
Mr. Walter H. Jones, attorney for defendant.
LEYDEN, J.S.C.
On this review the dispositive question, as limited by the pretrial order, is the power of the municipality to pass an ordinance regulating the removal of soil. The plaintiffs contend the ordinance contravenes article I, paragraph 1, and article I, paragraph 20 of the Constitution of New Jersey (1947), as an invasion of the right to acquire, possess and protect property; that it takes private property for public use without compensation, and violates the due process clause of the 14th Amendment to the United States Constitution. The defendant insists the ordinance is a valid, constitutional exercise of the police power of the municipality.
Foreseeing the dangers inherent in the unregulated, uncontrolled removal of soil within its borders the mayor and council of the borough regularly adopted an ordinance entitled: "An Ordinance to regulate the removal of soil for sale or for use other than on the premises and providing penalties for the violation thereof." It contains a preamble, as follows:
"Whereas, the Mayor and Council of the Borough of Old Tappan find and determine that the unregulated and uncontrolled relocation, filling, excavation and removal of soil on a large scale has resulted in conditions detrimental to the public safety, health and general welfare, substantially hampering and deterring the efforts of the Borough of Old Tappan to effectuate the general purpose of municipal planning."
*156 Substantially, the ordinance in section 1 provides that no one shall excavate or remove soil for sale, or use other than on the premises, except in connection with the construction of a building thereon and grading incidental thereto, without obtaining permission from the mayor and council; section 2 requires the filing of an application for permission for the removal of soil, together with a contour map of the premises and proposed contour grades resulting; section 3 makes provision for a hearing and sets forth the standards to be applied in granting or denying the application, to wit, consideration of the public health, safety and general welfare of the community, and more particularly soil erosion, drainage, soil fertility, lateral support, slopes and grades, and land values and uses; section 4 controls the manner of removal; section 5 requires the retention and re-spreading of at least six inches of top soil; section 6 requires the posting of a bond for the faithful performance of the work; section 7 prohibits the removal of soil without a permit, and section 8 provides penalties for the violation.
Without question the ordinance does impose limitations and restrictions upon the use and enjoyment of private property, but that in itself does not make it offensive in the constitutional sense.
"The authority of government to impose limitations upon the use and employment of private property rests upon two sources, first, the police power inherent in government to promote the safety, health, morals and general welfare of a community, and, second, the zoning provisions in our constitution and the ancillary statutes and ordinances passed thereunder." Duffcon Concrete Products, Inc., v. Borough of Cresskill, 137 N.J.L. 81 (Sup. Ct. 1948), reversed on zoning question, 1 N.J. 509 (1949).
The Legislature granted to municipalities the right to exercise the police power, R.S. 40:48-2, and the judicial branch of our government is enjoined to give laws concerning municipal corporations formed for local governments a liberal construction in their favor. Const. 1947, art. IV, sec. VII, par. 11.
*157 The preamble reveals that the police power of the municipality is invoked. It is recognized that the municipality has the power to regulate the use and enjoyment of property to a reasonable extent and in a reasonable manner above and beyond the constitutional authority to zone. The question is whether this ordinance goes beyond the power thus granted.
The defendant borough, situated in the northeasterly section of Bergen County, is a rural community approximating two and one-half square miles in area. Its population, according to the 1950 census, is 826, an increase of a little over 200 since 1940. Municipal systems of sanitary sewers and storm water drains have not as yet been constructed. Much of the area is virgin territory. The ground in the borough is composed of three layers: (1) the top soil extending to a depth of 10 to 12 inches, called by the soil experts the A horizon; (2) the subsoil known as the B horizon, and (3) the parent material designated as the C horizon. Top soil is the surface of fertile land, the best of the soil, and its presence is necessary for the effective growth of plant life. It is estimated by those who have studied the subject that nature requires a thousand years to produce one inch of such soil. Useless and offensive weeds such as ragweed will grow in sub-soil and parent material, but vegetation, as it is commonly understood, will not. Top soil has another important attribute not found in either sub-soil or parent material. It has the quality of retaining water.
There is presently considerable demand for top soil and fill in Bergen County. Owners of acreage and plots in the borough have, in at least four instances, stripped their land of and sold the top soil, sub-soil and parent material, leaving excavations, pits and declivities from three to nine feet below the level of surrounding lands and the grades of adjacent roads and highways. These denuded and excavated areas present many problems. Surface water collects, providing breeding places for mosquitos. Unusual practical difficulties are created in surface water drainage. Erosion by wind and *158 water cause further waste. The soil is permanently destroyed for agricultural use. In fact, the land is rendered almost valueless for any purpose, at least until the time arrives for use as residential or business property.
The effect of such blighted areas in a farming and residential community is to depress permanently the market value of other lands in the neighborhood by making them less desirable for sale or for the building of homes and developments. It seems obvious that a repetition of the process of stripping and excavating parcel after parcel of land might well result in disaster to the borough by the destruction of its taxable wealth and the retarding of its normal development.
The words of the present Chief Justice in Duffcon Concrete Products, Inc., v. Borough of Cresskill, 1 N.J. 509, at 514 (1949) are particularly apropos:
"Nor, when it is viewed in the light of these considerations, can the ordinance be said to be an arbitrary or unreasonable limitation upon the use of private property violative of either the Federal or state constitutions. * * * Numberless communities in this and other states present the sorry picture of what has been aptly characterized as urban blight. To hold that the State, through its municipal agencies, under conditions such as are here present may not thus afford protection to the health, safety, morals and general welfare of its inhabitants would be to deny one of the fundamental reasons for the existence of government."
Here the police power is exercised in a preventative way in reasonable anticipation of probable dangers and to protect the people of the community therefrom. The ordinance in question has as its objective the promotion of the general welfare, i.e., the preservation of the value of real estate, and the taxable wealth of the municipality. It seeks to protect a basic interest of society. The means employed to accomplish the result are not unreasonable, arbitrary or inappropriate.
Plaintiffs' rights are not affected any more seriously than are thousands of others whose rights of property are limited by the zoning laws. General public welfare is superior *159 in importance to pecuniary profits of the individual, and the right of private property must yield to the common good. Earruso v. Board of Health, East Hanover Twp., 120 N.J.L. 463 (Sup. Ct. 1938); Collins v. Board of Adjustment of Margate City, 3 N.J. 200 (1949).
The question seems to be one of first impression in New Jersey. However, similar ordinances regulating the removal of soil for sale and requiring the retention of a portion of the top soil have been upheld as a proper exercise of the police power in New York. Lizza & Sons v. Town of Hempstead, 69 N.Y.S.2d 296 (Sup. Ct. Spec. Term 1946), unanimously affirmed without opinion 71 N.Y.S.2d 14 (Sup. Ct. App. Div. 1947).
Lastly, it is said the standards set up for the guidance of the mayor and council are so vague as to be useless. There is no merit in this contention. The granting or denying of permission is not left to the uncontrolled discretion of the mayor and council. The ordinance sets forth in detail the matters which must be considered. See Salisbury v. Ridgefield, 137 N.J.L. 515 (Sup. Ct. 1948).
The ordinance is a valid, constitutional exercise of the police power, and a judgment may be submitted accordingly.