BOROUGH OF CRESSKILL, *ET AL.*, PLAINTIFFS-RESPOND-
ENTS, v. BOROUGH OF DUMONT, DEFENDANT-APPEL-
LANT.

Argued March 22, 1954—Decided April 5, 1954.

*Mr. Guy W. Calissi* argued the cause for the appellant.

*Messrs. Arthur J. O'Dea, Frank H. Hennessy, William A. Fasolo* argued the cause for the respondents.

The opinion of the court was delivered by

VANDERBILT, C. J.   From a decision of the Law Division of the Superior Court setting aside an amendment to its zoning ordinance the defendant Borough of Dumont appealed. We certified the borough's appeal on our own motion while it was pending in the Appellate Division.

The focal point of the action is Block 197 on the tax map of Dumont, which as a result of the challenged amendment to the zoning ordinance would be changed from an A and B residential zone to a D business district.   Two separate complaints were filed, the first by three neighboring boroughs of Cresskill, Demarest and Haworth and by several residents of these boroughs as well as by several residents of Dumont. The second complaint was filed by William A. Wendland and Marjorie Wendland, his wife, who are property owners on the block in question.

The first complaint in effect charges that the amendatory ordinance is not in accordance with the comprehensive zoning plans in effect in the boroughs of Cresskill, Demarest, Dumont and Haworth in that it fails to take into consideration the physical, economic, and social conditions prevailing throughout the entire area of those four municipalities and the use to which the land in that region can and may be put most advantageously, and that regard was given solely to the political boundaries of the Borough of Dumont in utter disregard of the contiguous residential areas of the plaintiff boroughs.   Lastly, the complaint charges that the amendment is invalid in that it represents "spot zoning" for the benefit of an individual property owner and thus constitutes a variance from the previously existing ordinance obtained without recourse to the Board of Adjustment of the Borough of Dumont, as prescribed by statute.   The complaint filed by the Wendlands asserts that the amendatory

ordinance is not in accordance with the comprehensive plan for zoning in Dumont, that the amendment will destroy the present character of the plaintiffs' lands, that it constitutes "spot zoning" and is an invalid attempt to grant a variance.

The defendant filed a separate answer to each complaint, claiming in each instance that the ordinance was a valid exercise of the zoning power. As to the first complaint, filed by the three boroughs and the individual plaintiffs, it claimed that neither the boroughs nor such individuals as were not residents of Dumont were proper parties, and that those plaintiffs who were residents of Dumont had no standing because their property rights were not affected. As to the complaint of the Wendlands the defendant claimed that the action was not brought in good faith and that the complaint failed to state a claim on which relief could be granted. The cases were consolidated for trial.

According to the 1950 census the four boroughs had a combined population of approximately 20,000. Dumont, with a population of 13,013, was the largest, while Cresskill was second with 3,534. Demarest had a population of 1,786, while Haworth followed with 1,612. Block 197 is a rectangularly shaped area at the extreme northeast corner of Dumont and extends north and south approximately 787 feet along Knickerbocker Road, a heavily travelled county highway, on the east and Franklin Street on the west. The block is approximately 195 feet wide, bordering on Massachusetts Avenue on the north and DeLong Avenue on the south. Massachusetts Avenue is the dividing line between the Boroughs of Dumont and Haworth, while Knickerbocker Road separates Dumont from the Boroughs of Cresskill and Demarest, with the result that across these two streets on the north and east sides of Block 197 are lands in adjoining municipalities. The properties adjoining Block 197 on the west and south are in Dumont.

The areas covered by the four municipalities are on the broad slope west of the Palisades. It is only in relatively recent years that the countryside has been converted from a rural to a highly developed suburban region. Due to

their comparatively late change in character these boroughs have been able to avoid the misfortunes of other municipalities which developed before the recognition in this State of zoning. All four boroughs are to a high degree residential in character with a total of between 6,000 and 7,000 dwelling units in all. The character of the entire region can best be understood by noting that throughout the entire length of Knickerbocker Road, which is a main county highway extending north from Englewood to the New York State line, with the exception of one small business area, there are only three business establishments, two of which are nonconforming uses. With the exception of a small area zoned for business, Cresskill is exclusively residential with no industrial district, and the area along Knickerbocker Road opposite Block 197 is strictly zoned for single-family dwellings. Similarly Demarest is almost entirely residential and the area adjoining Knickerbocker Road facing the block in question is zoned exclusively for single-family dwellings. Haworth has a small business zone but the borough is almost entirely residential and the area across Massachusetts Avenue to the north facing Block 197 is zoned exclusively for residential purposes.

Although Dumont has a small industrial and business zone, it also is principally zoned for residences. In Dumont the area extending west and south from Block 197 for approximately one-half a mile in both directions is zoned for residential use only, except for one corner lot near the property in question which was rezoned from a residential to a business district by an amendment to the ordinance, an action which the trial court characterized as "obviously spot zoning and illegal." In the immediate vicinity of Block 197 and to the west of it are over 100 one-family houses in the $17,000-price class which are in the process of construction, and the mayor of Dumont testified that 200 to 220 residences are to be constructed in that area.

In the adjoining area in Cresskill, Demarest and Haworth the properties are strictly residential with the exception of a gasoline service station, a tavern, and a construction storage

yard, all of which are nonconforming uses in the residential zone and are about one-third of a mile from Block 197. There is an attractive and ample business center in Dumont approximately half a mile from Block 197. There are also business centers in Cresskill, Demarest and Haworth at distances varying from nine-tenths of a mile to a mile and a tenth from Block 197. The shopping needs of the community are adequately cared for by these business centers.

The amendment to the zoning ordinance to change Block 197 to a "D Business District" had been under consideration by the Borough Council and the Planning Board of Dumont for three or four years, according to the mayor. On November 26, 1952, it was submitted to the planning board, which unanimously approved it. On December 9, 1952, it was adopted by a unanimous vote of the governing body of the borough at a meeting at which no objection was made by any residents of the borough, although representatives of the other three boroughs strenuously opposed it. Section 4 of the basic zoning ordinance of the borough adopted in 1942 provided that "D Business District is primarily intended for the conduct of commerce, general business and the sale of commodities and all such uses shall be permitted." The section then goes on to prohibit manufacturing, trucking, livery stables, slaughter houses and the like. It would appear, however, that such business activities as department and retail stores, theaters, motels, restaurants, garages and bowling alleys are permitted.

The only witnesses produced by the defendant borough were the mayor, a real estate appraiser, and a real estate broker. The mayor testified that Block 197 "was a logical place to put a business area, in keeping with the plan of the Borough. The best interests of the public would be served by placing a shopping center in an easily accessible area, that would have adequate off-street parking." He further stated that both the planning board and the council had considered traffic problems, parking facilities, the element of safety, the comprehensive zoning plan of the Borough and other important factors before voting upon the ordinance and that it

was the opinion of both the planning board and the council that the most appropriate use of this area was as a shopping center. The real estate appraiser testified that "If this area was set aside for business, and proper planning by a modern developer, for a shopping center, it is my opinion that it would help not only Dumont, but it would help the neighborhood." The real estate broker testified that "The effect of the value, I think, won't be altered more than very, very slightly; and the benefits through having a better business section close by would more than offset what might be considered slight depreciation in value."

The plaintiffs, on the other hand, produced several witnesses who testified as to the undesirable aspects of the zoning amendment both from the standpoint of traffic conditions and as it related to the comprehensive zoning plan both of the Borough of Dumont and of the three adjoining boroughs. There was testimony that Knickerbocker Road is a heavily travelled two-lane county highway where the traffic congestion, lack of parking facilities, and the general safety problem have for some time been a matter of public concern, and that the rezoning of Block 197 as a business district would increase these problems to the detriment of the public generally and especially of the residents of this area. There was also testimony that a new shopping center was unnecessary, since existing shopping facilities were adequate. Mr. Hugh R. Pomeroy, a zoning expert, testified that "In [his] opinion the rezoning of Block 197 to a D district classification, under the Dumont zoning ordinance, is not in accordance with comprehensive zoning for the Borough of Dumont." He also stated that considering the surrounding area in all four boroughs as a whole the zoning of this property for business use was not in accordance with a comprehensive plan considered in an intercommunity sense. Another of plaintiffs' experts testified that the rezoning would have the effect of depreciating the value of residential property in Block 197 as well as all other residential properties in the immediate vicinity. There was substantial testimony of other witnesses to support these conclusions.

The trial judge held that the ordinance was invalid since it did not promote the public welfare, was not in accordance with any comprehensive plan, and did not promote any of the statutory purposes relating to zoning.

## I.

The appellant first argues that the plaintiffs were not proper parties to the action and that therefore its motion to dismiss the complaint should have been granted. In this regard the appellant directs its attack primarily toward the three municipal plaintiffs and the individual plaintiffs who reside in the other boroughs. It is unnecessary, however, for us to decide this issue, because the Wendlands own property on Block 197, the very area affected by the amendatory ordinance. Clearly they have sufficient interest to bring this action. *Speakman v. Mayor and Council of Borough of North Plainfield*, 8 *N. J.* 250, 258 (1951), *Menges v. Township of Bernards*, 4 *N. J.* 556, 559 (1950). The fact that they did not testify is not significant, since they were parties plaintiff and all evidence produced on the plaintiffs' case inured to their benefit. It is therefore immaterial whether the municipal and remaining individual plaintiffs have adequate status to challenge the ordinance and the question is therefore reserved.

## II.

The appellant also contends that the trial court erred in considering the property in adjoining municipalities, claiming that only property lying within the borough itself is to be taken into consideration by the borough authorities in their zoning. In this regard it cites *Article IV, Sec. VI, par. 2* of the *New Jersey Constitution*:

"The Legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings

and structures, according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land, and the exercise of such authority shall be deemed to be within the police power of the State. Such laws shall be subject to repeal or alteration by the Legislature."

The pertinent statutory provisions (*N. J. S. A.* 40:55–30 *et seq.*) are as follows:

"Any municipality may by ordinance, limit and restrict to specified districts and may regulate therein, buildings and structures according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land, and the exercise of such authority, subject to the provisions of this article, shall be deemed to be within the police power of the State. Such ordinance shall be adopted by the governing body of such municipality, as hereinafter provided, except in cities having a board of public works, and in such cities shall be adopted by said board.

The authority conferred by this article shall include the right to regulate and restrict the height, number of stories, and sizes of buildings, and other structures, the percentage of lot that may be occupied, the sizes of yards, courts, and other open spaces, the density of population, and the location and use and extent of use of buildings and structures and land for trade, industry, residence, or other purposes." *N. J. S. A.* 40:55–30.

"For any or all of said purposes the governing body or board of public works may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this article, and it may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings or other structures, and the nature and extent of the uses of land, within such districts.

All such regulations shall be uniform for each class or kind of buildings or other structures or uses of land throughout each district, but the regulations in one district may differ from those in other districts." *N. J. S. A.* 40:55–31.

"Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality." R. S. 40:55–32.

The appellant spells out from the language of these constitutional and statutory provisions that the responsibility of a municipality for zoning halts at the municipal boundary lines without regard to the effect of its zoning ordinances on adjoining and nearby land outside the municipality. Such a view might prevail where there are large undeveloped areas at the borders of two contiguous towns, but it cannot be tolerated where, as here, the area is built up and one cannot tell when one is passing from one borough to another. Knickerbocker Road and Massachusetts Avenue are not Chinese walls separating Dumont from the adjoining boroughs. At the very least Dumont owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to those of residents and taxpayers of Dumont. To do less would be to make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning. There is no merit to the defendant's contention. The views set forth in *Duffcon Concrete Products, Inc. v. Borough of Cresskill*, 1 *N. J.* 509, 513 (1949) apply here with equal force:

"What may be the most appropriate use of any particular property depends not only on all the conditions, physical, economic and social, prevailing within the municipality and its needs, present and reasonably prospective, but also on the nature of the entire region in which the municipality is located and the use to which the land in that region has been or may be put most advantageously. The effective development of a region should not and cannot be made to depend upon the adventitious location of municipal boundaries, often prescribed decades or even centuries ago, and based in many instances on considerations of geography, of commerce, or of politics that are no longer significant with respect to zoning. The direction of growth of residential areas on the one hand and of industrial concentration on the other refuses to be governed by such artificial lines. Changes in methods of transportation as well as in living conditions have served only to accentuate the unreality in dealing with zoning problems on the basis of the territorial limits of a municipality, improved highways and new transportation facilities have made possible the concentration of industry at places best suited to its development to a degree not contemplated in the earlier stages of zoning. The same forces make practicable the presently existing and currently developing suburban and rural sections given over solely to residential

purposes and local retail business services coextensive with the needs of the community. The resulting advantages enure alike to industry and residential properties and, at the same time, advance the general welfare of the entire region."

See also *Monmouth Lumber Co. v. Ocean Township,* 9 *N. J.* 64, 73–74 (1952), *De Benedetti v. Township of River Vale,* 21 *N. J. Super.* 430, 435 (*App. Div.* 1952).

That comprehensive planning requires municipal officials to give consideration to adjoining and nearby properties in other municipalities is recognized not only by the decisions of our courts but also by various legislative enactments. As long ago as 1930, in defining the purposes of municipal planning the Legislature provided that municipal planning boards should give attention to "neighboring territory" and the "environs" of the municipality:

"In the preparation of the plan and map the planning board shall cause to be made careful and comprehensive surveys and studies of present conditions and future growth of the municipality, *due regard being taken to its relation to neighboring territory.* The plan and map shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted and harmonious development of the municipality *and its environs* which will, in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity and general welfare, as well as efficiency and economy in the process of development, including, among other things, adequate provision for traffic and recreation, the promotion of safety from fire and other dangers, adequate provision for light and air, the promotion of the healthful and convenient distribution of population, the promotion of good civic design and arrangement, wise and efficient expenditure of public funds, and the adequate provision of public utilities and other public requirements." *R. S.* 40 :55–10. (All italics here and hereafter in this opinion supplied)

In the enactment of the new Municipal Planning Act, *L.* 1953, *c.* 433, the foregoing section was repealed but its objectives as to the consideration of territory outside of the municipal boundaries was continued and enlarged:

"The master plan may include in its scope *areas outside the boundaries of the municipality* which the planning board deems to bear an essential relation to the planning of the municipality. The studies in connection with the master plan shall be conducted where-

ever possible *with the cooperation of adjacent planning agencies."* *N. J. S. A.* 40:55–1.11.

"The master plan shall be made with the general purpose of guiding and accomplishing a co-ordinated, adjusted and harmonious development of the municipality *and its environs* which will, in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity and general welfare, as well as efficiency and economy in the process of development and the maintenance of property values previously established." *N. J. S. A.* 40:55–1.12.

Although the exercise of zoning powers is a constitutional responsibility of the municipalities, *Article* IV, *Sec.* VI, *par.* 2, *supra,* it is to be noted that the Legislature has also provided for both county planning boards, *R. S.* 40:27–1, and regional planning boards, *R. S.* 40:27–9, thus indicating its intention to extend planning beyond municipal lines.

## III.

■ The vital problem here, and that upon which our decision necessarily rests, is whether, as charged by the respondents, the ordinance constitutes "spot zoning." *R. S.* 40:55–32 provides that zoning regulations "shall be in accordance with a comprehensive plan" to promote the specified statutory purposes. The test is whether the zoning change in question is made with the purpose or effect of establishing or furthering a comprehensive zoning scheme calculated to achieve the statutory objectives or whether it is "designed merely to relieve the lot of the burden of the restriction of the general regulation by reason of conditions alleged to cause such regulation to bear with particular harshness upon it." *Conlon v. Board of Public Works of City of Paterson,* 11 *N. J.* 363, 366 (1953). If it is in the latter category, the ordinance is invalid since it is not " 'in accordance with a comprehensive plan' " and in effect is " 'a special exception or variance from the restrictive residential regulation, thereby circumventing the board of adjustment to which is committed by our Zoning Act \* \* \* the *quasi*-judicial duty of passing upon such matters, at least

initially, in accordance with prescribed standards. * * *' "
*Speakman v. Mayor and Council of Borough of North Plain-field, supra,* 8 *N. J.* 250, 257. Our inquiry therefore has been directed to ascertaining whether in view of the purposes of the zoning act the action of the borough in rezoning Block 197 represents sound judgment based on the policy of the statute "to advance the common good and welfare" or whether it is arbitrary and unreasonable and furthers "purely private interests." *Schmidt v. Board of Adjustment of City of Newark,* 9 *N. J.* 405, 422 (1952).

The Borough of Dumont, as we have seen, is predominantly a residential community composed largely of one-family dwellings, as are the contiguous boroughs. The area surrounding Block 197 is, of course, residential and has been so zoned for years. The mayor testified that 200 to 220 one-family dwellings are to be constructed on the property adjoining Block 197 on the west. There is not the slightest indication that the character of the neighborhood is changing. The only exception to residential use in Dumont within one-half mile of the block in question is a small corner lot which the trial court properly characterized as a case of spot zoning at its worst. The business zone of Dumont, at which there is a fine shopping center, is one-half mile away. The comprehensive zoning plan of the borough reveals an intention to maintain this whole area as a residential one and the testimony clearly shows that the block is suitable for the construction of residences. There is no reason why it should not and cannot be used profitably for that purpose. On the other hand, the changing of Block 197 to a business use will not "lessen congestion in the streets; secure safety from fire, panic, and other dangers; * * * prevent the overcrowding of land or buildings; avoid undue concentration of population," as is required by *R. S.* 40:55–32, *supra.* On the contrary, the proposed use of the land cannot fail to achieve objectives that zoning was designed to prevent. One has but to remember that Knickerbocker Road, though an important artery of traffic from Englewood to the New York line, is merely a two-lane street to realize the consequences

which would flow from the congestion of traffic at Block 197 in the event of the construction of a shopping center there. We fully concur in the finding of the trial court that the ordinance under review "does not promote any of the statutory purposes relating to zoning."

Here the very purpose of the ordinance was to permit the construction of a shopping center on this one block. The council has in effect granted the owner a zoning variance, clearly an action beyond its powers. It follows therefore that the ordinance must be set aside as "spot zoning" in violation of the comprehensive plan of the borough and contrary to the provisions of the zoning law.

The judgment below is affirmed.

OLIPHANT, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice WACHENFELD—1.