GEORGE B. WARD, PLAINTIFF-APPELLANT, v. DONALD H. SCOTT, MAYOR, *ET AL.*, CONSTITUTING THE TOWN COUNCIL OF THE TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; HOWARD WEIKEL, *ET AL.*, CONSTITUTING THE BOARD OF ADJUSTMENT (ZONING) OF THE TOWN OF BLOOMFIELD; BROOKS C. MARTIN, BUILDING INSPECTOR OF THE TOWN OF BLOOMFIELD; AND LIGHAM CONSTRUCTION COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued May 10, 1954—Decided June 14, 1954.

Mr. *Everett M. Scherer* argued the cause for the appellant (*Messrs. Riker, Emery & Danzig,* attorneys; *Mr. George H. Callahan,* on the brief).

Mr. *Fred A. Lorentz* argued the cause for the respondent Ligham Construction Company (*Messrs. Lorentz & Stamler,* attorneys).

Mr. *Thomas J. Markey* argued the cause for the respondents Donald H. Scott, Mayor, *et al.,* Constituting Town Council of the Town of Bloomfield; Howard Weikel, *et al.,* Board of Adjustment (Zoning) of Bloomfield, and Brooks C. Martin, Building Inspector.

The opinion of the court was delivered by

JACOBS, J. On June 19, 1950 the Town Council of Bloomfield granted a variance to Ligham Construction Company pursuant to a recommendation of the Board of Adjustment under *N. J. S. A.* 40:55–39(*d*). This action was attacked in the Law Division but was sustained in an opinion which set forth the pertinent facts and the court's conclusion that the municipal bodies were justified "in finding special circumstances to warrant the granting of the variance requested, and that not to grant the variance would be an undue hardship." See 18 *N. J. Super.* 36, 42 (1952). On appeal, we held that subsection (d) of *N. J. S. A.* 40:55–39 constitutionally vested authority in the governing body to grant variances, upon the recommendation of the board of adjustment, "in particular cases and for special reasons" in accordance with the explicit statutory terms and without reference to the hardship requirement in subsection (c) on variances which may be granted directly by the board of adjustment, acting alone. We determined, however, that there were insufficient findings under subsection (d) and, accordingly, remanded the cause to the board for "reconsideration, findings and recommendation to the town council." See 11 *N. J.* 117, 129 (1952). After our decision was rendered *N. J. S. A.* 40:55–39 was amended by the Legislature; however, although it sharply restricted subsection (c) so as to prohibit the board itself from granting any variance which allows a structure or use in a district restricted against such structure or use, it deliberately continued subsection (d) without alteration so as to permit the board "in particular cases and for special reasons" to recommend for action by the governing body, a variance which allows a structure or use in a district restricted against such structure or use. *L.* 1953, *c.* 288. See *Beirn v. Morris*, 14 *N. J.* 529, 537 (1954).

On May 14, 1953 the board of adjustment again recommended the granting of the variance; this time its resolu-

tion set forth detailed findings and the following special reasons in support of its recommendation:

"1. By reason of the size and unusual shape the lot primarily caused by the conformation of the highway intersection of Broad Street and Watchung Avenue, it is not feasible to sub-divide the area for residential purposes. If the applicant were required so to do such a sub-division would not be in keeping with the plan for the development of the Town and would violate the spirit and purpose of the zoning ordinance.

2. That the boundary line of the Medium Volume Business Zone divides the lot, permitting general commercial uses (including retail stores) to be made of the 84 feet of the frontage along Broad Street; and, the southerly boundary line of the lot adjoins part of the 200 feet on Watchung Avenue street frontage included within the Medium Volume Business Zone, wherein stores and other structures may be erected for commercial purposes.

3. That the tract in question is adjacent to a fruit and vegetable stand, a diner and gasoline service station which create special conditions peculiar to the lot, imposing a burden upon the owner if the residential restriction upon the property is enforced.

4. That Broad Street and Watchung Avenue are main highways, heavily traveled and greatly congested by traffic, and where motor vehicles are allowed to park on both sides of the street; and, by the approval of the development sought herein, including the off-street parking area created thereby will tend to lessen congestion in the streets and afford an opportunity to compel removal of parked cars from the streets in the area as presently required and to meet future demands.

5. That the foregoing facts established by the evidence corroborates the conclusion of the Board upon personal inspection of the site, which reveals that the location of the lot, its appearance and the atmosphere created by surrounding uses made of the land, fit the pattern of the area for the development of the tract in question as a shopping center with off-street parking to meet the current demands of the commercial and residential area, as well as the future demands when vacant lands within a short distance of this lot are fully developed.

6. That the adjacent commercial structures and uses render it economically unsound to develop the lands for residential purposes and, if required, would aggravate a hazardous traffic problem which already exists at and near the intersection of Broad Street and Watchung Avenue.

7. That by allowing the variance sought by the applicant the existing and future needs of the particular area will best be served and that the public off-street parking area provided for, will provide a needed facility in the area to minimize the hazards presently existing and reasonably to be expected by the general growth of the community and the location of streets leading to State Highway 3.

20

8. That the 100 foot wide driveway and the 10 foot high planting strip along the northerly and easterly boundary lines of the lot will afford a buffer zone or screen for the parking area and shopping center.

9. That in granting the application the value of properties in the residential area will not be detrimentally affected; that the maintenance of the open area for off-street parking will promote the general welfare of the community by lessening congestion in the streets and providing the maximum of light and air; that the maintenance of the open space for ingress and egress will minimize the hazard to those entering and leaving the off-street parking area; that the plan for the development of the lot in question is advisable as the most economical use of the property in the interest of the Town of Bloomfield and in keeping with the intent and spirit of the zoning ordinance.

10. That it is found as a matter of fact that the relief sought is in the public interest and can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."

On June 1, 1953 the town council approved the recommendation for the reasons expressed in the resolution of the board and upon the understanding that the land would be developed in accordance with plans filed with the board and the building inspector. Once again the matter was brought before the Law Division which, on October 30, 1953, sustained the council's action and dismissed the plaintiff's complaint. In the course of his opinion Judge William A. Smith expressed the view that the principal reason for the granting of the variance was that the proposed building was "for the public good" and that the finding, that the relief sought was in the public interest, could be granted without substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance, was "supported by the record." We likewise find that there is sufficient in the record to preclude appellate disturbance of the governing body's action, supported by the zoning board's findings and recommendation and the affirming determination of the Law Division. See *Schmidt v. Board of Adjustment, Newark,* 9 *N. J.* 405, 423 (1952), where this court recently said:

"The rationale of the statutory scheme is that the board of adjustment shall supply expert discretion to, the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function."

Many other decisions in our State express similar views as to the extent of judicial review in zoning cases. *Rexon v. Bd. of Adjustment, Haddonfield,* 10 *N. J.* 1, 7 (1952); *165 Augusta Street, Inc., v. Collins,* 9 *N. J.* 259, 265 (1952); *Brandt v. Zoning Bd. of Adjustment, Mt. Holly Tp.,* 16 *N. J. Super.* 113, 117 (*App. Div.* 1951).

█ In the instant matter we are not concerned with an ordinance amendment which would permit not only the contemplated retail shopping center but all other businesses now allowed in the medium volume business zone. *Cf. Borough of Cresskill v. Borough of Dumont,* 15 *N. J.* 238 (1954); *Conlon v. Bd. of Public Works, Paterson,* 11 *N. J.* 363 (1953). Nor are we particularly concerned with precedents under subsection (c) which contains restrictions not embodied in subsection (d). *Cf. Beirn v. Morris, supra.* The only issue before us is whether, in the light of the special reasons advanced and the supporting evidence, the variance may be deemed to have been granted arbitrarily, capriciously or unreasonably. In passing on this issue we must look at the entire picture and consider the reasons in their aggregate; it is in nowise controlling that one or more of the reasons standing alone would not be legally sufficient. The land in question is near the busy intersection of Broad Street and Watchung Avenue. It is roughly in the form of a right angle triangle, having a frontage of 450 feet on Broad Street, a depth of 423 feet on its northerly boundary, and an hypotenus of approximately 600 feet. An 84-foot portion of its frontage is in the medium volume business zone and now bears a fruit and vegetable stand; adjacent property bears a diner and a gasoline station. Broad Street and Watchung

Avenue are heavily traveled main highways, parking conditions are very difficult and there are no nearby shopping areas with off-street parking facilities. The planned development of the land will include a modern shopping center, ample off-street parking facilities and a buffer zone or screen, and is designed to meet current needs of nearby areas which have already been developed and future needs of other nearby areas which have not yet been developed. As evidenced by the comprehensive and legally sufficient terms (within subsection (d)) of their resolution the municipal officials have concluded, among other matters, that the planned development will be for the public good and will benefit both the particular neighborhood and the town generally, whereas use of the land for residential purposes would not be feasible and would aggravate existing traffic problems. And they have also concluded that although an extension of the medium volume business zone for a distance of 366 feet along Broad Street would result, there would be no deterioration in the value of the properties in the residential area and no substantial impairment of the intent and purpose of the general zoning plan. We cannot say that these conclusions were without any substantial support in the light of the evidence in the record and the municipal officials' supporting view of the premises. See *Giordano v. City Commission of the City of Newark*, 2 *N. J.* 585, 588 (1949).

 Earlier judicial views have been displaced by recent cases in this court which hold that municipal governing bodies may exercise broad powers in their zoning regulation of land and structures. See *Fischer v. Township of Bedminster*, 11 *N. J.* 194, 201 (1952); *Lionshead Lakes, Inc., v. Township of Wayne*, 10 *N. J.* 165 (1952), appeal dismissed, 344 *U. S.* 919, 73 *S. Ct.* 386, 97 *L. Ed.* 708 (1953); *Duffcon Concrete Products v. Borough of Cresskill*, 1 *N. J.* 509 (1949). Although these cases have been the subject of varying comments, we are convinced that they are in furtherance of constitutional and statutory objectives and the public welfare generally. Compare *Haar, Zoning for Minimum Standards: The Wayne Township Case*, 66 *Harv. L. Rev.* 1051 (1953),

with *Nolan and Horack, How Small a House?—Zoning for Minimum Space Requirements,* 67 *Harv. L. Rev.* 967 (1954). See 4 *Rutgers L. Rev.* 71 (1950); 6 *Rutgers L. Rev.* 93 (1951); 7 *Rutgers L. Rev.* 85 (1952); 8 *Rutgers L. Rev.* 73 (1953). But we are equally convinced that the sanctioning of far-reaching zoning restrictions must fairly be accompanied by sympathetic recognition that there will arise, from time to time, exceptional situations which will justly call for individual variances within the prescribed legislative conditions and standards. See *N. J. S. A.* 40:55–39; *Ward v. Scott,* 11 *N. J.* 117, 122 (1952). Local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people, are undoubtedly the best equipped to pass initially on such applications for variance. And their determinations should not be approached with a general feeling of suspicion, for as Justice Holmes has properly admonished: "Universal distrust creates universal incompetence." *Graham v. United States,* 231 *U. S.* 474, 480, 34 *S. Ct.* 148, 151, 58 *L. Ed.* 319, 324 (1913). Where, as here, the application for variance has been given careful and conscientious consideration by the zoning board and the town council and has been acted upon by both of them in strict conformity with the procedural and substantive terms of the statute, the ultimate interests of effective zoning will be advanced by permitting the action of the municipal officials to stand, in the absence of an affirmative showing that it was manifestly in abuse of their discretionary authority. *Cf. Cobble Close Farm v. Bd. of Adjustment, Middletown Tp.,* 10 *N. J.* 442, 453 (1952); *Schmidt v. Board of Adjustment, Newark, supra.* We are satisfied that there was no such showing in the instant matter.

Affirmed.

HEHER, J. (dissenting). Quite apart from the question of the constitutional sufficiency of *N. J. S. A.* 40:55–39(*d*), as conferring a power not contained by a definite and certain primary administrative standard, considered in the dissent rendered on the prior submission of this cause, 11 *N. J.* 117,

129 (1953), the rule of action sanctioned by the majority does not take into account the basic difference in the statutory zoning process between an "exception" and a "variance."

An "exception" concerns the legislative function; a "variance" in the very nature of the term is the means of relief to the individual lot owner where, due to circumstances peculiar to the particular lot, adherence to the zone regulation would constitute interference with the fundamental right of private property greatly disproportionate to the common good attending the literal enforcement of the general rule, such as would entail hardship unnecessary to the service of the public interest in the exertion of the zoning power, and so would be arbitrary and unreasonable.

The essence of zoning, as we have so often said, is territorial division according to the character of the lands and structures and their peculiar suitability for particular uses, and uniformity of use within the division. *Collins v. Board of Adjustment of Margate City*, 3 *N. J.* 200 (1949). Arbitrary distinctions are alien to the constitutional and statutory principle. It is basic to comprehensive use-zoning that the use restriction be general and uniform in the particular district. *Schmidt v. Board of Adjustment of Newark*, 9 *N. J.* 405 (1952); *Brandon v. Montclair*, 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940). An "exception" is allowable to serve the common good and welfare rather than merely private interests; but the conditions for such special use must be found in the local legislative act and may not be varied. *Schmidt v. Board of Adjustment of Newark*, cited *supra; Stone v. Cray*, 89 *N. H.* 483, 200 *A.* 517 (*Sup. Ct.* 1938). Exceptions involve the exercise of an original jurisdiction for the accommodation of zoning practice and public needs exceptional in nature, and thus reasonably to serve the essential common interest as an integral part of the zoning process to the same end.

But a "variance" constitutes the exercise of a discretionary administrative function in conformity with general rules of conduct laid down by the legislative authority, for the amelioration of the strict letter of the law; it is not a legis-

lative act in itself, but rather the effectuation of the will of the lawgiver manifested by a definitive standard of action where, for special and peculiar reasons, the general rule cannot justly be applied in the particular case, and thereby to avoid the "spot zoning" by local legislative practice which is inevitable unless there be administrative adjustment by a local agency controlled by specific rules of conduct. In states which administer zoning without a local board of adjustment, instead of a "variance—in the form of a permit which does not alter the zoning map—the regulations relating to a particular lot are changed to accommodate the needs of the applicant." *Bassett on Zoning*, 121, 122 (1940). And to be remediable, it is fundamental that the deficiency inhere in the specific lot, either in its own peculiar characteristics or in its environment; the "needs of the surrounding lands or houses do not constitute a basis for the variance." *Ibid*. 124.

Such is the essence of the statutory zoning process. These terms are treated as words of art having a commonly understood sense and significance in this specialized field of municipal action. The powers of the local board of adjustment are declared in *R. S.* 40:55–39. Subdivision (b) authorizes "special exceptions" by this agency "in accordance with" the provisions of the local zoning ordinance; subdivision (c) permits a "variance" by the same authority where, in the enumerated special circumstances, conformance to the general rule would entail "peculiar and exceptional practical difficulties" or "exceptional and undue hardship" upon the owner of the particular piece of land, provided, however— and this proviso came in after the disposition of this cause on the earlier submission, *L.* 1953, *c.* 288—"that no variance shall be granted under this paragraph to allow a structure or use in a district restricted against such structure or use"; while subdivision (d) purports to confer upon the local administrative agency power to recommend to the governing body, "in particular cases" and for "special reasons," the granting of a "variance" to allow a structure or use "in a district restricted against such structure or use," whereupon

the "governing body or board of public works" may, by resolution, "approve or disapprove such recommendation."

What is the significance of the proviso introduced into subdivision (c) by the amendment of 1953, following the earlier decision in this cause? As pointed out in *Beirn v. Morris*, 14 *N. J.* 529 (1954), the introducer's explanatory statement speaks of "considerable confusion throughout the State with respect to the powers of the boards of adjustment as set forth in *Revised Statutes, section* 40:55–39, particularly concerning paragraphs c and d of the section," and affirms that the purpose of the proposed amendment "is to clarify such powers," a measure "endorsed," it is said, by the New Jersey State League of Municipalities, the New Jersey Institute of Municipal Attorneys and the New Jersey Federation of Official Planning Boards. This court there reaffirmed the basic principles of zoning—*i. e.*, the use restriction must be general and uniform in the particular district, and all property in like circumstances treated alike; and it is of the essence of the zoning process, an attribute indispensable to its integrity, that a "variance" from the general regulation is permissible only in rare instances and under exceptional circumstances, and for the relief of specific instances peculiar in their nature, and the community-at-large as well as individual landowners in the particular use district has an interest in the security of the zone plan that may not be arbitrarily denied. The provision was deemed a restrictive rather than a mitigative clarification; and relief under subdivision (c) was there refused on the ground that the particular lot was not "uniquely circumstanced," the distinguishing characteristic of a "variance" which, I submit, applies with equal force to the variance made the subject of subdivision (d), as in the nature of a deviation from local use zoning that under constitutional and statutory principle and policy can be had only by means of "general laws" and a "comprehensive plan" and is proof against the exercise of the legislative function by the local administrator.

In keeping with these considerations, I read the "clarifying" amendment as authorizing the board of adjustment to permit

a variance under subdivision (c), but not for a structure or use "in a district restricted against such structure or use," and under subdivision (d) to recommend to the governing body the allowance of a variance "in a district restricted against such structure or use," but in either case only for reasons peculiar to the particular piece of land which give it a unique character or status calling for relief to avoid what would otherwise constitute an arbitrary application of the general rule. And this is so irrespective of the need of importing the definitive standards of subdivision (c) to render subdivision (d) immune from attack as vesting in the local administrator what in essence is legislative power.

The variances allowable under subdivisions (c) and (d) are essentially the same. The "special reasons," however inexplicit the term, must inhere in and be peculiar to the particular lot for which the variance is sought, and not common to lands in the area, for in the latter case the question would be the integrity of the regulation itself as inclusive of territory inadaptable to the permissible use. A variance presupposes the reasonableness of the zone regulation as a whole. General hardship is relievable only by a revision of the general rule of the ordinance or by the judicial process. *Brandon v. Montclair*, cited *supra*. Such is the nature of the statutory "variance" as distinguished from the "exception" provided for in subdivision (b). Under (c) the jurisdiction of the administrative agency is exclusive, save as to a variant structure or use in a district restricted against such structure or use; under (d) the power is recommendatory merely where the proposed use is forbidden in the district. The proviso added to subdivision (c) clarifies subdivision (d), and renders the jurisdictional coverage of each definite and certain. Unless this be so, the proviso has no meaning whatever. The legislative intent is not to be collected from any particular expression, but from a general view of the whole of the act; one part of a statute must be so construed by another, that the whole may, if possible, stand. *Dwarris on Statutes*, 45, 48.

Indeed, the respondent landowner here concedes that relief is to be had under subdivision (d) only where the particular plot has unique characteristics in relation to the general use restriction; but the insistence is that such is the case here. I hold the contrary view.

The proposed "variance" is a concession to a land developer admitting of a more profitable use of a tract of land designed to contain 84 dwelling houses and a one-story commercial building, to house a supermarket and eight stores with a large parking area in the rear, all this by a plan of the whole that set apart a portion for the commercial enterprise in such way as to give it the semblance of a unique relation to the remainder, and so to extend the business zone along Broad Street, in Bloomfield, a distance of 368 feet into a residence zone and effect a change of zone boundary, a legislative function, by means of a variance in direct violation of the statutory mandate against a divergency that would "substantially impair the intent and purpose of the zone plan and zoning ordinance." To effectuate the plan, the plot to be devoted to business uses was conveyed to another wholly-owned corporation, and the variance was solicited by that entity. But the owner may not so lay out his land as to provide the basis for a variance for irregularity of shape, and the like, and thus to defeat the general rule of the ordinance. *Collins v. Board of Adjustment of Margate City*, cited *supra*.

The beneficial owner of the Ligham Construction Company's stock, Ligham, testified thus:

"Q. Mr. Ligham, will you tell the Board and me, for the record, just what it is that you think makes your situation unique in asking for a variance? A. I don't think it is any more unique than anybody else asking it. It is simply a proposition that we are going to take and improve the section. After all, the building of $200,000 or $250,000 is not a liability to the location, it is going to be an asset, to my way of thinking. Q. Is there any hardship going to be caused to you if this variance should not be granted? A. There is going to be a hardship because people will have to go across Watchung Avenue."

The variance was originally grounded in "the proximity of other commercial buildings" to the locus. Now, on the

very same record, the local administrative authority finds it sustainable by ten separate reasons involving asserted peculiarities inherent in the particular plot rendering it unsuitable for residence uses, environmental factors, traffic hazards, and the "fitness" of the area "for the development of the tract in question as a shopping center with off-street parking to meet the current demands of the commercial and residential area, as well as the future demands when vacant lands within a short distance of this lot are fully developed," and the belief that, "by allowing the variance," the "existing and future needs of the particular area will best be served," and the "public off-street parking area provided for will provide a needed facility in the area to minimize the hazards presently existing and reasonably to be expected by the general growth of the community and the location of streets leading to State Highway 3," and the "maintenance of the open area for off-street parking will promote the general welfare of the community by lessening congestioñ in the streets and providing the maximum of light and air," and "the maintenance of the open space for ingress and egress will minimize the hazard to those entering and leaving the off-street parking area." The majority says that in "passing on this issue we must look at the entire picture and consider the reasons in their aggregate; it is in no wise controlling that one or more of the reasons standing alone would not be legally sufficient."

But these are the considerations, all of them in the aggregate, which moved the administrative authority to action; and they unmistakably bespeak action basically legislative, wholly beyond the province of the administrative agency. It represents an *ultra vires* exercise of the original jurisdiction of the local governing body to grant an exception under subdivision (b) "in accordance with the provisions" of the ordinance. *Vide Schmidt v. Board of Adjustment of Newark,* cited *supra.* And it works a change of zone boundary, the exclusive concern of the local legislative authority. Changes in zone boundaries may be had only by ordinance, conditioned upon the favorable vote of two-thirds of the governing body

in case of the disapproval of the proposed change by the planning board or a protest by the owners of 20% or more of lots within a prescribed area. *R. S.* 40:55–31; 40:55–35, as amended. The statutory planning function is an integral part of the zoning process. *Hasbrouck Heights Hospital Association v. Borough of Hasbrouck Heights*, 15 *N. J.* 447 (1954). The division in the local governing body at the outset and on the present resolution of approval indicates the legislative power would have been invoked in vain. The administrative agency also divided, 3 to 2, on each submission.

And there is no showing whatever of a public need for the proposed commercial center. The proofs show an excessive local reservation of land for commercial purposes, and more than ample facilities of this class in the immediate area. Moreover, the locus is usable for conforming dwellings.

The allowance of the proposed variance will contravene the principle of the recently decided case of *Borough of Cresskill v. Borough of Dumont*, 15 *N. J.* 238 (1954), where Chief Justice Vanderbilt considered and found wanting under somewhat similar conditions an ordinance permitting the construction of a shopping center in a residence zone bordering an area where 200 to 220 one-family dwellings were to be constructed. The ordinance was set aside "as 'spot zoning' in violation of the comprehensive plan of the borough and contrary to the provisions of the zoning law."

I would reverse the judgment of the Superior Court and vacate the resolution under review.

Mr. Chief Justice VANDERBILT joins in this opinion.

*For affirmance*—Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Chief Justice VANDERBILT, and Justice HEHER—2.