45 N.J. Super. 1 (1957)
131 A.2d 529
THOMAS A. GARTLAND, ET AL., PLAINTIFF-APPELLANTS,
v.
BOROUGH OF MAYWOOD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND BERGEN MALL AND MAY-PAR GARDEN CENTER, INTERVENING DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1957.
Decided March 26, 1957.
*2 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frank H. Hennessy argued the cause for plaintiffs-appellants (Messrs. Hennessy & Mowry, attorneys).
*3 Mr. Edward G. Evertz argued the cause for defendant-respondent Borough of Maywood (Messrs. Winne & Banta, attorneys).
Mr. George A. Brown argued the cause for intervening defendants-respondents, Bergen Mall and May-Par Garden Center (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. Francis V.D. Lloyd, of counsel).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiffs, residents of the Borough of Maywood, instituted this action before the Superior Court, Law Division, for the purpose of having an amendment to the borough's zoning ordinance set aside. Judge Leyden, for the Law Division, sustained the amendment, and plaintiffs bring this appeal. The underlying question is whether the amendment is so manifestly neglectful of the general welfare of Maywood that the courts should strike it down.
The amendment rezones a strip of land, 270 feet wide, extending between two parallel lines, namely, Spring Valley Avenue in Maywood and the northerly line of Maywood which separates Maywood from Paramus. This strip, comprising 16 1/2 acres, extends along most of the northern boundary of this small community. Prior to the amendment it was part of a "B" district, in which one- and two-family dwellings, farming, gardening and horticulture were permitted; however the amendment, designating the area a "D-X" district, authorizes office buildings and off-street parking facilities, in addition to one- and two-family dwellings.
In 1932, while the northern part of Maywood and adjacent areas in Paramus were still largely rural, the State opened up Route 4 through Paramus, a short distance north of Maywood's northerly line. It has become a heavily traveled artery, and under Paramus' first zoning ordinance adopted in 1946, that part of Paramus, which adjoins the 16 1/2 acres, was zoned in part for industry and in part for business. On the other hand Maywood has grown up as a residential *4 community for some five (or nine, depending on how one counts them) blocks on the north end of the borough  right up to the south side of the 16 1/2 acres  and for a couple of blocks on the east side thereof. Despite these developments, the 16 1/2 acres remained an open strip of land, used largely for farming until perhaps 1950, and owned (along with some of the adjoining land in Paramus) by two persons for years. One of these owners would not sell. But why, we do not know. In 1950 most of the 16 1/2 acres was subdivided for the purposes of development, and two houses were put up and 35% completed.
Then in 1951 the greater part of the 16 1/2 acres, and in that year or some time thereafter, 90 acres in Paramus on the south side of Route 4, were bought up by the interests which control the intervening defendants, Bergen Mall and May-Par Garden Center, with a view to erecting thereon a huge shopping center. Incidentally, the two houses above referred to were leveled. The intervenors originally planned to erect upon the 16 1/2 acres some of the buildings making up the center, but when it was determined that this could not be done (whether or not the borough council refused to accept that plan, does not appear), the entire project was then moved 80 feet to the north. In 1954 the borough council, by formal resolution, rejected what appeared to be other proposals of Bergen Mall for the use of the area in question. However, a year later  when the issuance of building permits by Paramus turned the shopping center into an inevitable reality, from which the Borough Council of Maywood found no escape  the amendment before us was introduced and adopted. The passage of the ordinance was the product of comprehensive findings on the part of the Maywood Planning Board, a thorough study by the police department as to traffic problems, and public meetings before the borough council. The problem had been publicly aired in the borough for a considerable period of time.
Plaintiffs' argument essentially is founded upon the constitutional guaranties of due process and equal protection (Brandon v. Montclair, 124 N.J.L. 135, 142 (Sup. Ct. *5 1940), affirmed 125 N.J.L. 367 (E. & A. 1940); Raskin v. Morristown, 21 N.J. 180, 194 (1956)) and upon the statute demanding compliance with a comprehensive plan. N.J.S.A. 40:55-32. In the application of these dictates there is no escape from the imprecision of a general standard. Professor Haar in a much cited article holds out hope for relief in this matter if the Legislature would only require zoning amendments to conform to a formally adopted master plan. But under such a proposal a zoning change would merely be obliged to pass through two stages, an amendment first of the plan and second of the ordinance; and however salutary such legislation might be in other respects, the courts would find themselves still working with the old standard, applying it against the first stage of the process. Haar, "In Accordance with a Comprehensive Plan," 68 Harv. L. Rev. 1154 (1955).
The standard that governs the courts is simply this: the municipality must reasonably, conscientiously and without arbitrary discrimination provide for the interests of the community now and in the foreseeable future. But there is another important factor to be added to the standard. The devising of a zoning amendment is not judicial business; we are not asked to sit in with the governing body. Nor are we entrusted with a broad superintendency over the matter. We may interpose our judicial authority only where there is an abuse of this standard that is manifest (Ward v. Scott, 16 N.J. 16, 23 (1954); Nectow v. Cambridge, 277 U.S. 183, 187, 48 S.Ct. 447, 82 L.Ed. 842, 844 (1928))  that is, only where there is clearly unreasonable action or other more untoward conduct. Except in such a case, the court's attitude must be one of withdrawal, and not of intrusion. Indeed there is some evidence of a tendency in the last ten years to enlarge the area of authority confided to local governing bodies, and thus incidentally, to contract that left open for the abrogation of the local act through a judicial edict. See, for example, Art. IV, Sec. VII, par. 11 of the 1947 Constitution; N.J.S.A. 40:69A-28 to 30, the powers of municipalities adopting the Optional Charter *6 Law; N.J.S.A. 40:55-39(d), the broad standard applicable since 1953 to practically all variances.
Plaintiffs attack the ordinance before us on the ground that it is spot zoning. But spot zoning is merely a typical situation where the standard referred to has been broken. Its vice lies in a singling out, by the governing body, of a small area for some end that does not reasonably serve to further the general public interests. There are ways of securing such special treatment, namely, through a variance or exception, where appropriate, but then only by invoking the jurisdiction of the board of adjustment. Borough of Cresskill v. Dumont, 15 N.J. 238, 249 (1954).
Plaintiffs seem to think of zoning merely as a defensive measure offered a narrow regionalism against outside interests. But that is a short view of the matter. Zoning is to be regarded rather as a power given the governing body to provide for the general welfare of the community broadly, having regard not only for "the character of the district" rezoned (N.J.S.A. 40:55-32), but in addition  as so strongly stated in Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509, 513 (1949) and Borough of Cresskill v. Dumont, 15 N.J. 238, 247-249 (1954)  for the character of adjoining areas lying outside municipal boundaries, which may reasonably be said to bear upon the zoning plan. More than that, it is a power entrusted to the governing body for the purpose not merely of resisting depreciatory forces, but of seeing to it, by an affirmative exercise of the rezoning process, that the property throughout the community  including the area proposed to be rezoned  is devoted to its "most appropriate use." N.J.S.A. 40:55-32.
When shopping centers move into a community, they, as might be expected, sometimes raise zoning problems, but whether they should be tolerated or not depends, as with nearly all such problems, upon the circumstances of the case. See the following decisions dealing with zoning amendments or variances involving such centers: Ward v. Scott, 16 N.J. 16 (1954); Katobimar Realty Co. v. Webster, 20 N.J. 114 *7 (1955); Borough of Cresskill v. Dumont, 15 N.J. 238 (1954); Moriarty v. Pozner, 21 N.J. 199 (1956); Annotation, 51 A.L.R.2d 263, 298 (1957), citing cases which have upheld attempts to establish such centers.
Plaintiffs' argument, at its sharpest point, comes down to this: the zoning amendment here has been tailored to the requirements of the shopping center; Maywood has bowed to them. For example, shops in the proposed D-X area must meet these qualifications: they must be small, that is, each must occupy less than 3,000 square feet; they can be located only in the office buildings permitted by the ordinance, and not above the first story; and they can be used but for these purposes:
"Newstand, cigar store, optician, drug store, travel agency, real estate and insurance office, book store, flower shop, lunch room primarily for the convenience of tenants of such building and their invitees and licensees."
In short, so plaintiffs say, these restrictions are pointedly designed for the elimination of competition with the shopping center. On the other hand, it might be noted here (in partial defense of the ordinance in this particular) that the amendment authorizes only those shops which seem appropriate in high class office and professional buildings.
Plaintiffs complain more generally that the ordinance gives to the rezoned area a character drawn from this nest of business buildings now rising outside the municipal limits, and not drawn from the residential community within the borough. They resent this intrusion. We should also note that plaintiffs complain that six properties on the western end (a comparatively small segment) of the rezoned area are being discriminated against in that the size of five of these properties is so small that office buildings cannot be erected thereon under the terms of the ordinance. But, so far as appears, the owners of these properties do not object, and it is difficult to see why we need stop on this particular.
As we understand it, plaintiffs' whole contention fundamentally is this: the amendment is invalid because it was *8 designed chiefly for the benefit of the intervening defendants and only incidentally, if at all, for the benefit of the community broadly. If this is so, the above-stated standard is violated, and the amendment cannot be sustained. Borough of Cresskill v. Dumont, 15 N.J. 238, 250 (1954).
In connection with that contention, it is important to consider whether, as plaintiffs say, the strip of land could still be regarded as desirable property on which to put one- and two-family houses, notwithstanding the advent of the huge shopping center. Or would the restrictions of the ordinance as it existed prior to the amendment, probably prevent all development of the strip for some years to come, leaving the property in the interim in its present state, a barren, vacant, treeless tract? Or even if dwellings were erected on this tract and sold, would they, as a result of the operation of the shopping center, become run down? We think that if the borough council had reasonable cause to conclude that the proposed zoning amendment would save this substantial strip of land from becoming for some years a blighted or at least a deteriorated area, its action cannot be condemned. For the council's action must then be regarded as having advanced the interests of the community by and large, and not solely the interests of the intervenors. We therefore need give no consideration to the question that would be presented if the zoning ordinance, as it formerly stood, could be deemed to be confiscatory under present conditions. Arverne Bay Const. Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587, 592, 117 A.L.R. 1110 (Ct. App. 1938).
Addressing himself to this general problem, one expert for plaintiffs, a realtor, asserted on direct examination that the rezoned area "would be desirable for the erection of certain types of one family homes with certain restrictions," but later stated "frankly" that "the proper use of the property should be" for garden apartments as a buffer zone. An architect called by plaintiffs asserted on direct examination that the property would be desirable for two-family houses (at least if one got the property "pretty cheap"), but on *9 cross-examination he, too, said that its "most appropriate use" (N.J.S.A. 40:55-32), "the most desirable development," would be for garden apartments. Their third expert, a zoning consultant, said on cross-examination (differing with his own direct examination), that the municipality should create a transitional zone, but he would not have advised doing what the borough did. He did say, however, that office buildings and parking lots are appropriate for a transitional zone between an industrial district and a residential district, but not for a transitional zone between a shopping center and a residential area.
On the other hand, one expert for the intervenors, a specialist in city planning and zoning, said that the land, if it had not been rezoned, would probably have remained vacant and become an untidy lot; that even if the unlikely did occur and the property were developed with one- and two-family houses, still the noise and hurly-burly of the shopping center would be such that the houses close by would eventually run down. Another expert for the intervenors, a realtor, asserted that if the land had not been rezoned, it would have lain idle for some years and become a no man's land. As Judge Leyden said, interpreting the witness' answer, the only privilege the owner then would have would be to pay taxes. See Raskin v. Morristown, 21 N.J. 180, 195 (1956):
"`Property owners in a Residential district cannot create a "no man's land" at the border of their own district by forbidding one property owner in an adjoining district from making any use at all of his property, or any use for which it is "peculiarly suitable" * * *.'"
In Dowsey v. Village of Kensington, 257 N.Y. 221, 177 N.E. 427, 430, 86 A.L.R. 642 (Ct. App. 1931), Justice Lehman said:
"Certainly an ordinance is unreasonable which restricts property upon the boundary of the village to a use for which the property is not adapted, and thereby destroys the greater part of its value in order that the beauty of the village as a whole may be enhanced."
*10 The Maywood Planning Board gave it as its opinion that the area is
"not now adaptable to or appropriate for residential use and development * * * Even if it were eventually devoted to residential purposes, it would, because of its location adjoining property zoned for business and industry, perforce be below the standards and character of residential development that would be to the best interests of the Borough * * *."
Even though there was no agreement among plaintiffs' and defendants' experts, we see no justification for this court, under the particular facts presented here, to make new findings on the point, contrary to the premises on which the planning board and the borough council acted. We conclude, then, that some affirmative action on the part of the council was proper, in the interests of the entire community, for the purpose of freeing this strip of land from forces that, it could reasonably be said, would otherwise impair the community.
We are brought, therefore, to a closer examination of the zoning amendment in order to ascertain whether the governing body acted arbitrarily in doing what it did. The amendment provides for office buildings to be used for business and professional purposes, not over five stories high, each covering no more than one-third of the plot on which it is erected. The building is to be 40 feet from the street line and, whenever possible, to be so oriented that its shorter side fronts on the street closest to the building. Ample off-street parking must be provided, as specifically required, for each building.
The amendment sought, also, to alleviate the traffic problems that will be generated by this shopping center (and incidentally by another huge shopping center, called in the record the Macy-Bamberger Center, a mile away in Paramus). It was estimated that 85% of the cars coming to Bergen Mall would have been induced to take to the road solely to shop there; only 15% would have been on the road anyway. It was expected, too, that 17% of the Bergen Mall traffic *11 would come through Maywood. In anticipation of this traffic, the Maywood police, with expert assistance, made extensive studies and recommended those provisions of the amendment which relate to off-street parking facilities. The feature of this plan is that it enables the Center to build (as it apparently contemplates doing) an internal system of roads over the tract comprising the 90 acres owned by it in Paramus and most of the 16 1/2 acres in Maywood. Provision is made for four contacts between the Maywood streets and this internal system, three entrances and one exit, each 60 feet wide, thus getting the traffic off the public streets as quickly as possible and dispersing it through the internal roads. Incidentally, these entrances are so located as to reduce, at a busy intersection in Maywood, the left turns which always serve to tie up traffic when there is much of it.
Under the amendment the parking facilities must be depressed at least three feet where they abut Spring Valley Avenue and must be enclosed with a wall at least three feet high and eight inches thick, with some trees on the outer side, and with lights that do not reflect on a public street or adjoining properties. Since the top of the wall will be six feet above the floor of the facility, and since the ordinary car is only five feet high, automobiles, when parked, will be largely hidden from the view of the residents of Maywood.
This is the case, not of a community which had met with no change in circumstances, cf. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 73 (1952), but on the contrary one which was brought up face to face with a gigantic development, just over its border, a project it did not want and could not prevent. Bergen Mall, as envisaged, will consist of 16 large buildings, with over 100 retail units and substantially more than 900,000 square feet of floor space ultimately costing some $50,000,000; it is expected to draw upon a market area of 1,500,000 persons (1950 census) and to bring to its doors 30,000 customers a day  a huge undertaking which overshadows the narrow strip of land before us.
We have said above, that regard must be had for *12 those adjoining areas lying outside a municipality, insofar as they affect its zoning plan. We need not go so far (at least in this case) as to say that one community may subject its local interests to developments in the next community in order to serve the public interests of the entire region. But surely the first community is to be allowed in some reasonable way to fend off the deteriorating forces existing outside its borders  particularly when dealing with a marginal undeveloped strip of land which joins with the offending tract in forming what has for years been largely a single integral district. A zone is not to be proscribed merely because it is transitional in character. Raskin v. Morristown, 21 N.J. 180, 198 (1956).
The two qualified zoning experts called as witnesses in this case, one by the plaintiffs and the other by the intervening defendants, each admitted upon Judge Leyden's questioning, that reasonable men could differ as to whether the area in question should be zoned for one- or two-family houses, as desired by plaintiffs, or zoned as the borough has done in the amendment  that it was a reasonably debatable matter. As Justice Heher has said in Salisbury v. Ridgefield, 137 N.J.L. 515, 518 (Sup. Ct. 1948), "debatable questions as to reasonableness * * * are not for the courts but for the legislative tribunal." Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 353 (1953).
Affirmed.