130 N.J. Super. 470 (1974)
327 A.2d 675
WILLIAM F. HYLAND AND BLUE CHIP PROPERTIES, INC., PLAINTIFFS-APPELLANTS,
v.
MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MORRIS, DEFENDANTS-RESPONDENTS, AND SPRING BROOK HOMES ASSOCIATION, A NONPECUNIARY CORPORATION OF THE STATE OF NEW JERSEY, INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1974.
Decided May 28, 1974.
*472 Before Judges CARTON, LORA and SEIDMAN.
Mr. Stewart G. Pollock argued the cause for appellants (Messrs. Schenck, Price, Smith and King, attorneys; Messrs. Stewart G. Pollock and Michael S. Bubb, on the brief).
Mr. Sidney D. Weiss argued the cause for Defendants-Respondents (Messrs. Rosen and Weiss, attorneys).
*473 Mr. Sheldon Simon argued the cause for Intervenor-Respondent (Messrs. Bangiola & Simon, attorneys).
The opinion of the court was delivered by CARTON, P.J.A.D.
Plaintiffs appeal from a judgment rejecting their challenge to the validity of an amendment to the zoning ordinance of the Township of Morris. The amendatory ordinance in question was enacted on February 9, 1972.
Plaintiffs are the owners of a tract of land consisting of about 25 acres in Morris Township.
It appears that in 1961 the Township established a new Office and Laboratory Zone (O & L) which included land now owned by plaintiffs. The new zone extended westerly from a public street, known as South Street, to a line running 300 feet east of and parallel to James Street, a two-lane public street to the west. The only public access for the O & L Zone was from South Street. The 300 foot strip between the O & L Zone and James Street retained its pre-existing residential classification.
In 1966 the alignment of I-287 was established through this sector of the municipality. The highway alignment bisected the O & L Zone leaving plaintiffs' tracts lying entirely west of the I-287 right-of-way, but fronting on residentially zoned James Street and bounded by the highway access interchange on the south and by other land on the north. The property thus lay in two zones  the westerly portion consisting of about eight acres and running to a depth of 300 feet from James Street was located in a residential zone; the easterly portion, comprising the remainder of the tract and bordering on the highway, was located in the Office and Laboratory Zone.
In May 1970 the plaintiffs applied to the Board of Adjustment for a use variance authorizing the construction of two driveways from the portion of their property in the O & L Zone, across other parts of their property zoned for residential *474 use to James Street. On July 13, 1970 the Board of Adjustment denied plaintiffs' request. On August 28, 1970 plaintiffs filed an action in Superior Court challenging that determination.
While the matter was before the court, the Township Committee requested the Planning Board to recommend the appropriate zoning for the lands between James Street and I-287. Despite opposition from defendant Spring Brook Homes Association, an organization of homeowners in that area, the Planning Board recommended that the O & L Zone be extended to James Street.
The Township Committee then met with trustees of the homeowners' association at the home of one of its trustees on March 7, 1971 to discuss the rezoning of the land in question. At the next regular meeting of the Township Committee on March 10, 1971, the question of rezoning the land was postponed until the Superior Court, Law Division had rendered its decision.
On May 21, 1971 that court held the use variance should have been granted. The Township Committee and other defendants appealed that decision on July 8, 1971 with the apparent motive of delaying the start of construction of plaintiffs' proposed office building. In a per curiam opinion on February 7, 1972 this court affirmed.
The ordinance under attack in this proceeding was introduced on January 12, 1972 and referred to the Planning Board. This ordinance transfers plaintiffs' property from O & L Zone to R-3 residential. The Planning Board adopted a resolution disapproving the ordinance on February 7, 1972. Two days later, the Township Committee, by a vote of 4 to 1, adopted the ordinance despite the Planning Board's unfavorable recommendation.
Another amendatory ordinance not directly pertinent to the present controversy, allowing clustering of dwellings in R-3 zones and revising clustering provisions in R-2 zones, was subsequently adopted by the governing body. On October 16, *475 1972 the Township's first Master Plan, which recommended low density residential development for the area including plaintiffs' land, was adopted by the Planning Board.
At trial both parties introduced expert testimony as to the feasibility of using plaintiffs' land for single-family dwellings. Mr. Winston, who testified for the plaintiffs, prepared plans and cost estimates on the basis of the requirements of the Township ordinances for a residential development of the tract. He concluded that the cost of developing the tract would be $747,983 without clustering, and that the cost would vary from $681,550 to $720,250 with clustering. Mr. Winston's plans were prepared in accordance with standard engineering procedures.
Defendants produced Mr. Kirkpatrick who prepared plans specifically for use at trial. He was of the opinion that a residential development would involve costs varying from $275,000 to $375,000.
Real estate appraisers testified on behalf of both parties; plaintiffs' expert testifying on the figures provided by plaintiffs' engineer, projected a loss of $287,000 to plaintiff or $94,000 if clustering should be employed. The witness did state that if he used Mr. Kirkpatrick's figures the result would be different. The defendants' expert arrived at the conclusion that a residential development would result in a probable profit of $163,500.
Plaintiffs' witness Ostergard, an acoustical engineer, stated that home construction within 250 feet of the highway right-of-way would violate criteria established by the Federal Highway Administration for highway design purposes and by the Department of Housing and Urban Development in connection with federally assisted mortgages.
Defendants' witness Goodfriend offered the contradictory view that homes constructed within 220 feet of the nearest edge of the highway pavement would meet both criteria and that the distance could be reduced by use of sound barrier devices such as an acoustical fence. Both witnesses agreed that *476 both the F.H.W.A. and H.U.D. criteria had limited authority. In situations which do not involve highway construction or federal mortgages or loan guarantees, the criteria serve only as a guide to evaluating the effect of noise.
Although the record is not entirely clear on the point, there appears to be general agreement that an office complex would generate more traffic on local roads than would a residential development. The two real estate appraisers both agreed that homes built on this tract would be marketable.
The trial court, in concluding that the amendment was valid, made the following findings:
(1) The tract can be developed for one-family houses in an R-3 zone at a cost which would be feasible;
(2) The noise factor, although a substantial deterrent, would not preclude that development;
(3) The homes constructed on the site could be marketed at a reasonable profit;
and
(4) One-family homes would tend to cause less aggravation of traffic problems in the area.
Plaintiffs argue that the ordinance should be declared void because it was not enacted for a valid zoning purpose but rather to meet the demands of the Spring Brook Homes Association. Plaintiffs contend that the only purpose behind the ordinance was placating the Association.
There is, of course, a strong presumption in favor of the validity of zoning regulations. Thornton v. Village of Ridgewood, 17 N.J. 499 (1955); Lionshead Lake, Inc. v. Township of Wayne, 10 N.J. 165 (1952), appeal dismissed 344 U.S. 919, 73 S.Ct. 386, 97 L.Ed. 708 (1953). The burden of establishing the invalidity of a zoning ordinance is on the person attacking the ordinance, Vickers v. Tp. Com. of Gloucester Tp., 37 N.J. 232 (1962), cert. denied 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963), and the burden is to show affirmatively that the ordinance bears no reasonable relationship to public health, morals, safety or welfare. Monmouth Lumber Co. v. Ocean Tp., 9 N.J. 64, 71 (1952). Here there was no determination that plaintiffs met that burden.
*477 N.J.S.A. 40:55-32 requires that zoning regulations be designed for one or more of the following purposes:
to lessen congestion in the streets; secure safety from fire, flood, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. * * *
In addition to the specified purposes, the statute also requires that such regulations be "in accordance with a comprehensive plan" and "made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
The plaintiffs made no serious attempt to show that the terms of the ordinance bear no reasonable relationship to the purposes contained in N.J.S.A. 40:55-32. On the basis of the evidence in the record, the ordinance can reasonably be interpreted to advance several of the purposes for which zoning regulations may be enacted, including protection of the character of the community and lessening of traffic congestion.
We perceive no substance to plaintiffs' argument that the amendatory ordinance deviates from the comprehensive plan to which zoning ordinances should conform and thus constituted "spot zoning." We are of the opinion that the ordinance can fairly be said to be in accordance with a comprehensive plan. While it is true the "comprehensive plan" for Morris Township was adopted after the enactment of the ordinance, this fact does not demonstrate that the ordinance is not in accordance with a comprehensive plan. The court in Ward v. Montgomery Tp., 28 N.J. 529, 536 (1959) said that there does not have to be an extrinsic guide, but the zoning ordinance reasonably designed to produce a homogeneous pattern of location and uniform development of varient land uses indicates such a plan. The enactment of *478 the ordinance in question to use I-287 to divide residential from O & L Zones does indicate such a plan. Of course, the ordinance is in conformity with the subsequentially adopted master plan.
Construction of I-287 caused the land rezoned by the ordinance in question to be cut off from the rest of the O & L-1 Zone. This left plaintiffs' land completely surrounded by the highway and residential property. Construction of I-287 made integrated use of both sides of the highway difficult, if not impossible. Rezoning of the land on the west side of the highway to residential made all the land on the west side residential, and the land on the east side remains office and laboratory. The ordinance is not, therefore, a deviation from a comprehensive plan, but rather a change designed to achieve a different concept warranted by the changed conditions. In reality, the rezoning imposed upon plaintiffs' land imposes burdens similar to those imposed upon the surrounding lands. It was not a case of "spot zoning" to allow a use different from that of the surrounding area. In this connection, we note that large, open areas bordering the right-of-way of I-287 in addition to plaintiffs' tract are zoned residential. Inspection of the aerial photographs also indicates that areas immediately adjacent to the highway are actually devoted to that use.
The mere fact that only the land on the west side of I-287 was rezoned does not indicate that the amendment is not in furtherance of a comprehensive plan. Palisades Properties, Inc. v. Brunetti, 44 N.J. 117 (1965). Nor does the fact that the rezoning conformed to the wishes of the Association indicate that it is deficient in respect to the statutory requirement that zoning regulations conform to a comprehensive plan. See Kozesnik v. Montgomery Tp., 24 N.J. 154 (1957).
Plaintiffs argue that the Township's action in appealing the decision of the Law Division in regard to the variance and its acts in accordance with the desires of the Association *479 amounted to a demonstration that the ordinance was not enacted for a valid purpose. We do not agree.
The Township had a right to appeal the adverse decision. While that appeal may have caused a delay which benefitted the Township's position, the exercise of that right does not of itself indicate the ordinance was enacted for an invalid purpose.
Nor does the fact that the Township Committee met with the Association establish that the ordinance was enacted solely for the purpose of placating the Association. Its members had a right to make their views known to the Township Committee. See Eastern R.R. Conference v. Noerr Motor Freight, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).
Although a circumstance to be considered in determining the validity of the ordinance, the fact that it corresponded with the wishes of the Association does not constitute a misuse of zoning power where it has not been shown that the ordinance was enacted solely for that purpose. See Kozesnik v. Montgomery Tp., supra 24 N.J. at 173; Gartland v. Borough of Maywood, 45 N.J. Super. 1 (App. Div. 1957).
LaRue v. East Brunswick, 68 N.J. Super. 435 (App. Div. 1961) provides no support for plaintiffs' position. There the court criticized municipal officials for accepting a dinner invitation from a developer who had matters pending in the municipality. This court, while saying that the acceptance showed "poor judgment," nonetheless discounted its effect on the merits of the case, finding no evidence "that the meeting resulted * * * in anything more than a frank (if somewhat one-sided) discussion of the local zoning provisions from a developer's point of view." 68 N.J. Super. at 445, 446.
Plaintiffs' reliance on Wital Corp. v. Denville, 93 N.J. Super. 107 (App. Div. 1966) is also misplaced. There plaintiff offered evidence showing the real purpose of an ordinance was to depress the value of plaintiff's land which the municipality intended to acquire. This court remanded for an *480 inquiry into the purpose of the ordinance. There has been no showing of such an abuse in this case.
It certainly was poor judgment for the officials to have a private meeting with those favoring the adoption of the ordinance. However, there is no evidence that the meeting "resulted * * * in anything more than a frank (if somewhat one-sided) discussion of the local zoning provisions" from the Association's point of view. Plaintiffs do not charge that there was any corrupt agreement between the Township officials and the Association as a result of that meeting.
The meeting with the Association, the delay in any decision until after elections, and the fact that the ordinance was passed even though the Planning Board disapproved the ordinance, lend some credence to plaintiffs' argument as to the governing body's motives. Here again, this sequence of events does not of itself establish that the ordinance was enacted for an invalid purpose. When the legislative judgment is at least debatably reasonable and valid, the ordinance must be sustained. Bow & Arrow Manor v. Town of West Orange, 63 N.J. 335, 343 (1973); Kozesnik v. Montgomery Tp., supra, 24 N.J. at 167; Vickers v. Tp. Com. of Gloucester Tp., supra, 37 N.J. at 242. Here the trial judge heard all the witnesses during the course of the extended trial. He had an opportunity to consider all the evidence and to judge the credibility of the witnesses as well as the motivation and actions of the officials. His determination sustaining the validity of the ordinance was amply supported by the record.
Plaintiffs' argument that the ordinance is an arbitrary, capricious and unreasonable exercise of the zoning power is essentially the same argument advanced under the previous contention and needs no extended treatment. An exercise of zoning power is arbitrary, unreasonable and capricious when it bears no rational and reasonable relationship to the purposes of zoning found in N.J.S.A. 40:55-32. See Gabe Collins Realty, Inc. v. City of Margate, 112 N.J. Super. 341, 346-347 (App. Div. 1970); J.D. Construction *481 Corp. v. Board of Adjustment, Township of Freehold, 119 N.J. Super. 140, 145 (App. Div. 1972).
Here it was not shown that the ordinance bore no rational relationship to the purposes of zoning. As we have already noted, the evidence in the record justified an opposite conclusion.
Plaintiffs' final argument is that the amendatory ordinance is confiscatory. They argue that in zoning the land R-3 an excessive burden was placed on land which is tantamount to confiscation.
As noted by the trial judge, the evidence in regard to using the land was in sharp conflict. Plaintiffs' land was not zoned into idleness. While an office or multiple dwelling units may prove more profitable, Judge Byrne found that "[t]he tract can be developed for one-family houses * * * at a cost which would be feasible." There was reasonable evidence to support that finding. In light of the evidence and his findings, the challenged ordinance cannot be said to be confiscatory.
Affirmed.