156 N.J. Super. 505 (1978)
384 A.2d 172
HILL HOMEOWNERS ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, JOSEPH MATULE AND SOPHIE MATULE, HIS WIFE, AND NORMAN KURITSKY AND GLORIA KURITSKY, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
CITY OF PASSAIC, ELIAS DRAZIN, BUILDING INSPECTOR OF THE CITY OF PASSAIC, AND PARK SLOPE CONSTRUCTION CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 17, 1978.
Decided February 28, 1978.
*507 Before Judges ALLCORN, MORGAN and HORN.
Mr. Jay Pasternack, attorney for appellant Park Slope Construction Corporation.
Messrs. Wittman, Anzalone, Bernstein & Dunn, attorneys for respondents (Mr. Thomas W. Dunn on the brief; Mr. Frederick L. Bernstein, of counsel).
PER CURIAM.
The corporate plaintiff, an association of homeowners, and several of its individual members owning property in proximity to defendant's proposed high-rise apartment building, were successful in obtaining from the trial judge, following a nonjury trial, a judgment enjoining construction of the apartment house on the ground that its design was in violation of the requirements of the local zoning ordinance adopted after an alleged building permit had been issued and after monies had been allegedly expended in reliance thereon. The judge in an oral opinion held that the proposed building did not conform to the ordinance, that no building permit had, in fact, been issued and that, in any event, defendant had not made expenditures and investments in reliance upon a valid building permit authorizing construction of the nonconforming building. Defendant appeals.
The operative facts are relatively free from dispute although the parties differ as to the conclusions to be drawn therefrom. On May 23, 1973 defendant builder entered into a contract to purchase property at 94-98 Boulevard, Passaic, New Jersey, as a site for an apartment building for $80,000. *508 Application to the local planning board for site plan approval, made on June 6, 1973, resulted in advice that the purchased lot did not fulfill the 30,000 square feet minimum lot size requirement, and "in order to avoid trouble" and "on the advice of the people of the Planning Commission and the powers in the City Hall," defendant on June 14, 1973 contracted to purchase adjacent property at 88 Boulevard for $50,000. According to defendant's brief, its application was tabled over the summer in order to carry the matter until a new board was constituted in September 1973.
In the meantime, on July 5, 1973, title to the property at 94-98 Boulevard was closed and on September 25, 1973 site plan approval for the proposed 12-story, 101-unit building was granted subject to proof that defendant owned the building at 88 Boulevard.
Defendant, however, encountered a snag when the contract seller of 88 Boulevard declined to go through with the deal. The ensuing suit for specific performance was, on July 24, 1974, settled by defendant agreeing to pay an additional $10,000 for the property, and defendant was thereby enabled to prove to the planning board ownership of that contiguous parcel of land in order to fulfill the minimum lot size requirement.
On the day following the settlement it applied for demolition and building permits. In evidence appears a "building permit" for foundation and excavation work and a demolition permit, both issued on July 29, 1975. On the demolition permit appears the handwritten notation, "demolition of one family dwelling and excavation and foundation for highrise condominium." The dwelling on 88 Boulevard has not been demolished and still stands. All buildings on 94-98 Boulevard had been demolished before purchase. The "building permit" did not allow for construction of the building, but merely for excavation and foundation work. The record is unclear what, if any, excavation work has been done.
Meanwhile, and before issuance of the above permits, a new zoning ordinance was adopted decreasing the permitted *509 density of use of the two lots; by its terms only 70 dwelling units, rather than the 101 units proposed, were permitted on the land. Unquestionably, defendant's proposed building did not comply with the new ordinance which was adopted before issuance of the permits but which became effective within weeks thereafter.
Although defendant admits nonconformity of the proposed building with the requirements of the new ordinance, it contended at trial that because of the issuance of the above described permits and its expenditures and actions in reliance on them and on the prior site plan approval, it acquired a vested right, akin to a nonconforming use, to erect the building despite the ordinance change.
As a preliminary matter, we dispose of defendant's contention that plaintiffs lacked standing to obtain injunctive relief, an issue not raised at the trial level, as being without merit. The individual plaintiffs are all neighboring property owners whose homes are directly across the street from defendant's proposed building, plaintiff Matule's home being only 75 or 80 feet from that property and plaintiffs Kuritsky only 125 feet away. Their concern that the proposed 101-unit apartment building would result in a population and traffic increase in the neighborhood, with the normal difficulties in parking and other incidents of increased density of use, constitutes sufficient special damages, distinct from and greater than that of the community as a whole, to provide them with standing to bring this action. Garrou v. Teaneck Tryon Co., 11 N.J. 294, 300 (1953); Frizen v. Poppy, 17 N.J. Super. 390, 393 (Ch. Div. 1952); Yanow v. Seven Oaks Park, Inc., 15 N.J. Super. 73, 80-81 (Ch. Div. 1951); Weber v. Pieretti, 72 N.J. Super. 184 (Ch. Div.), aff'd 77 N.J. Super. 423 (App. Div. 1962). See also, 4 Anderson, American Law of Zoning (2 ed. 1977), § 27.11 at 334; 3 Rathkopf, Law of Zoning and Planning, at 66-20, 21. The individual plaintiffs having standing, it is unnecessary for us to consider the corporate plaintiff's right of participation.
*510 Passing to the merits of the controversy, we first consider defendant's challenge to the judge's finding that a building permit had not been issued to defendant before the change in the zoning ordinance became effective. Defendant's concern with this factual matter stems from its attempt to bring itself under the protective mantle of the doctrine derived from Tremarco Corp. v. Garzio, 32 N.J. 448 (1960) and expounded in Sautto v. Edenboro Apartments, Inc., 69 N.J. Super. 420 (App. Div. 1961):
These decisions, taken together, indicate that where a property owner has been granted a building permit for a use valid when granted, the municipality nevertheless has a right to adopt later zoning or other police power legislation restrictive of the enjoyment of the permit already issued, but not where the permittee in reliance upon the permit has made substantial investment or expenditure, or where the extent of his reliance and the nature of the behavior of the parties show a balance of the equities strongly in favor of the permittee as against the general public represented by the municipal authorities (or, as here, a complaining taxpayer-owner). [at 429-430]
Recognizing that under this principle expenditures and efforts in furtherance of construction of a building not in conformity with a newly adopted ordinance must be in reliance upon issuance of a building permit valid when issued, defendant is understandably chagrined at the court's finding that no permit for the construction of the building was ever issued defendant. Defendant, however, concedes, as it must, that the permits issued did not authorize construction of the building. At best, they permitted demolition of an existing one-family dwelling on one of the two parcels and completion of excavation and foundation work, and the trial judge so found. That the authorization for excavation and foundation work was labeled a "building permit" is of no moment since it is clear from the document itself, and defendant so concedes, that whatever its label it did not authorize construction of the proposed apartment house complex. Hence, whatever action was taken after these permits issued could not *511 have been in reliance upon authority to erect the building. And significantly, the work which the permits did authorize was never undertaken; the one-family dwelling was never demolished and the extent of excavation and foundation work, if any, for the apartment house was never determined.
We regard Donadio v. Cunningham, 58 N.J. 309, 322 (1971), as controlling authority for the proposition that issuance of a valid permit for erection of the proposed building is a necessary condition to immunity from a subsequent ordinance change after the owner has acted in reliance thereon. In Donadio the court clearly elucidated the necessary components of this proposition:
In fact our cases protecting a landowner against subsequent municipal legislation, by reason of actions taken by him, rest upon acts done after the issuance of the permit. * * * The paramount public interest dictates that no equity should arise in an owner's favor and that he should have no right of reliance until the municipality has, by issuing a valid permit, officially approved the project at the first level of authority. * * * [at 322]
Clearly, by the issuance of the demolition permit and the permit authorizing excavation and foundation work, the municipality had not, in this case, officially approved erection of this ten-story apartment house, particularly since no plans or specifications for the building had ever been submitted. Hence, whatever action defendant builder took could not have been in reliance upon official approval of the project at the municipal level as evidenced by a permit authorizing construction of the building since none was ever issued.
Defendant's contention that reliance upon the site plan approval was sufficient to protect it from the restrictions of the later change in the zoning ordinance is without merit. First, although site plan approval conditioned upon proof of ownership of the adjacent tract was received on September 25, 1973, defendant's right to the adjacent tract was not settled until July 24, 1974. Any action taken by defendant during this interim of only conditional approval must be regarded *512 as being at its risk. Second, the effective date of the new ordinance was August 5, 1974; less than two weeks intervened before the condition for approval was satisfied and the effective date of the new ordinance. Nothing that defendant did during that brief period of time constituted sufficient reliance to warrant its immunity from the restrictions of the ordinance change. Third, we conclude that defendant was not justified in relying upon the site plan approval. All existent authority holds by direct implication that site plan approval triggers no right of reliance. In Morris v. Postma, 41 N.J. 354, 362 (1964), a judgment requiring issuance of a building permit was not regarded as creating a right of reliance which, if exercised, immunized the owner from a change in the zoning ordinance. See also, Roselle v. Moonachie, 49 N.J. Super. 35, 43 (App. Div. 1958). In Dimitrov v. Carlson, 138 N.J. Super. 52 (App. Div. 1975), a variance was held not to create a vested right immunized from subsequently enacted municipal legislation. We see no reason why site plan approval made final only briefly before the later ordinance should be given a different effect.
Apart from the fact that no action was taken by defendant in reliance upon a valid building permit, the record amply supports the conclusion of the trial judge that defendant's evidence concerning the extent of its reliance, even on the site plan approval, was inadequate and, in any event, reliance so evidenced was insufficient to obtain protection against the effect of the ordinance change. Crecca v. Nucera, 52 N.J. Super. 279, 286-87 (App. Div. 1958). Defendant's claim that this action is barred by laches and estoppel is clearly lacking in substance. R. 2:11-3(e)(1)(E).
Affirmed.