639 A.2d 318

MANALAPAN REALTY, L.P., PLAINTIFF–RESPONDENT–CROSS–
APPELLANT, v. TOWNSHIP COMMITTEE OF THE TOWNSHIP
OF MANALAPAN AND THE TOWNSHIP OF MANALAPAN,
DEFENDANTS–APPELLANTS–CROSS–RESPONDENTS.

———

MANALAPAN REALTY, L.P., PLAINTIFF–RESPONDENT–CROSS–
APPELLANT, v. MANALAPAN TOWNSHIP PLANNING BOARD,
DEFENDANT–APPELLANT–CROSS–RESPONDENT.

———

HOME DEPOT U.S.A., INC., INTERVENOR–RESPONDENT–CROSS–
APPELLANT, v. TOWNSHIP COMMITTEE OF THE TOWNSHIP
OF MANALAPAN, THE TOWNSHIP OF MANALAPAN AND
MANALAPAN TOWNSHIP PLANNING BOARD, DEFEN-
DANTS–APPELLANTS–CROSS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1993—Decided March 14, 1994.

1

2

Before Judges MICHELS, SKILLMAN and WEFING.

*Robert F. Munoz* argued the cause for appellants-cross-respondents Township Committee of the Township of Manalapan and the Township of Manalapan in A–1228–92T1 (*Lomurro, Davison, Eastman & Munoz,* attorneys; *Mr. Munoz,* of counsel and on the brief).

*James H. Gorman,* argued the cause for appellant-cross-respondent Manalapan Township Planning Board in A–1439–92T1.

*Michael M. Rosenbaum* argued the cause for respondent-cross-appellant Manalapan Realty, L.P. (*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade,* attorneys; *Mary L. Moore* and *Mr. Rosenbaum,* on the brief).

*Michael B. Steib* argued the cause for respondent-cross-appellant Home Depot U.S.A., Inc.

The opinion of the court was delivered by

**SKILLMAN, J.A.D.**

This appeal requires us to determine the validity of an amendment to the Township of Manalapan's zoning ordinance which excludes from Manalapan's C-1 regional commercial shopping center district "[r]etail stores . . . engaged in the sale of lumber or building materials or storing, displaying, or selling materials outside a completely enclosed building."

Plaintiff Manalapan Realty, L.P. (Realty) is the owner of a fifty-seven acre tract which is the site of a shopping center known as the Manalapan Mall. Realty filed an application with the defendant Manalapan Township Planning Board (the Board) for preliminary site plan approval for a substantial expansion of the Mall. The proposed expanded Manalapan Mall is designed to include several anchor stores, one of which would be a home improvement center operated by intervenor Home Depot U.S.A., Inc. (Home Depot).

One of the issues raised at the hearings on Realty's application for preliminary site plan approval was whether the proposed Home Depot facility would be a "retail store," which would be a permitted use, or a "warehouse," which would be prohibited. Relative to this issue, evidence was presented that a Home Depot store engages in the bulk storage of merchandise both inside and outside its premises, and that it makes substantial direct sales to contractors. At the hearings before the Board, substantial public opposition to the proposed Home Depot store emerged. This public opposition resulted in the defendant Township Committee adopting an amendment to the zoning ordinance which excludes retail stores which sell lumber or building materials or which store, display, or sell materials outside the premises from the C-1 regional commercial shopping center district.

The Board subsequently passed a resolution granting Realty's application for preliminary site plan approval. This resolution recognized that Manalapan's amended zoning ordinance would preclude the operation of a Home Depot store within the regional commercial shopping center district. This resolution also recog-

nized that Realty had filed suit challenging the amended ordinance, and it expressed the Board's uncertainty whether the proposed Home Depot store would be a permitted use under the prior zoning ordinance even if the amended ordinance were invalidated:

> In the event that this ordinance amending the permitted uses in the C–1 zoning district is ruled invalid by a Court of competent jurisdiction, the prior C–1 zoning district regulations will be in effect and those regulations do not include warehouses as a permitted use. . . .
>
> A Home Depot store and similar stores present elements of both retail and warehouse uses. These stores are a new concept and may not be a permitted use in any existing zoning district in the Township. The Township's master plan and zoning ordinances should be examined to determine whether these mixed use retail/wholesale stores should be permitted in a specific zone or zones.

Realty filed two prerogative writ actions, one challenging the validity of the amended zoning ordinance and the other challenging the part of the Board's resolution which left unresolved whether the proposed Home Depot store would be a permitted use under the prior ordinance. The trial court consolidated these actions. Subsequently, it granted Home Depot leave to intervene as a plaintiff. After a six day bench trial, the trial court issued a written opinion which concluded that the amendment to Manalapan's zoning ordinance was arbitrary and capricious and therefore invalid. The trial court also concluded that the proposed Home Depot store was a permitted use under Manalapan's prior zoning ordinance, which was reinstated as a result of the invalidation of the amended ordinance. Consequently, the trial court vacated the paragraphs of the Board's resolution which had left this question for later resolution in the event the ordinance were invalidated. Thereafter, Realty and Home Depot filed motions to compel defendants to reimburse them for various litigation expenses. These motions were granted in part and denied in part.

The Township Committee appeals from the parts of the judgment declaring that the amended zoning ordinance is invalid and that the proposed Home Depot store is a permitted use under the now reinstated prior ordinance. The Township Committee also appeals from the post-judgment order awarding Realty and Home

Depot various litigation expenses. The Board appeals from the part of the judgment which declares the Home Depot store to be a permitted use and from the post-judgment order awarding plaintiffs various litigation expenses. Realty and Home Depot cross-appeal from the parts of the post-judgment order which denied an award of the full amount of litigation expenses which they had sought. We consolidate the two appeals.

We conclude that the essential parts of Manalapan's amended zoning ordinance excluding retail stores which sell lumber or building materials or which store, display, or sell materials outside a completely enclosed building from the regional commercial shopping center district are valid. Although the definition of "building materials" contained in this amended ordinance may be too broad, any invalid part of that definition would be severable from the remainder of the ordinance and thus would not affect its validity. Our conclusion that Manalapan's amended zoning ordinance is valid makes it unnecessary for us to decide whether a Home Depot store would have been a permitted use under Manalapan's prior zoning ordinance. Our reversal of the judgment in plaintiffs' favor also requires a reversal of the post-judgment order awarding them various litigation expenses.

"A zoning ordinance is insulated from attack by a presumption of validity...." *Riggs v. Township of Long Beach,* 109 *N.J.* 601, 610–11, 538 *A.*2d 808 (1988). This presumption may be overcome only "by a showing that the ordinance is 'clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute.'" *Id.* at 611, 538 *A.*2d 808 (quoting *Bow & Arrow Manor v. Town of West Orange,* 63 *N.J.* 335, 343, 307 *A.*2d 563 (1973)). Moreover, unless a zoning ordinance infringes upon a fundamental right, there is no requirement that it recite "tangible, specific objectives promoted by the ordinance in order to be valid." *Zilinsky v. Zoning Bd. of Adjustment of Verona,* 105 *N.J.* 363, 371, 521 *A.*2d 841 (1987). Instead, the municipality may rely entirely upon planning objectives first identified during litigation defending the validity of the

ordinance, and "[t]o sustain a constitutional attack, plaintiff must rule out any set of facts that reasonably supports the ordinance." *Ibid.* The reason for this limited judicial role in reviewing the validity of a zoning ordinance was explained in *Kozesnik v. Township of Montgomery,* 24 *N.J.* 154, 167, 131 *A.2d* 1 (1957):

> The zoning statute delegates legislative power to local government. The judiciary of course cannot exercise that power directly, nor indirectly by measuring the policy determination by a judge's private view. The wisdom of legislative action is reviewable only at the polls.

Consequently, a municipality has broad discretion in deciding whether to create a shopping center district within its boundaries. *See Gartland v. Borough of Maywood,* 45 *N.J.Super.* 1, 6–7, 131 *A.2d* 529 (App.Div.), *certif. denied,* 24 *N.J.* 339, 131 *A.2d* 903 (1957). If a municipality chooses to create such a district, it has equally broad discretion regarding the types of stores which it will permit to operate within the district. *See Pierro v. Baxendale,* 20 *N.J.* 17, 118 *A.2d* 401 (1955); *Van Corp. v. Mayor & Council of Ridgefield,* 41 *N.J.Super.* 74, 124 *A.2d* 48 (App.Div.), *certif. denied,* 22 *N.J.* 227, 125 *A.2d* 440 (1956); *420 Broad Ave. Corp. v. Borough of Palisades Park,* 137 *N.J.L.* 527, 61 *A.2d* 23 (Sup.Ct.1948). A municipality may permit those retail stores which it feels will serve the most important needs of its citizens, but prohibit those stores which serve less important or immediate needs or which interfere with the operation of other businesses. A municipality also may prohibit a specific type of business operation based on aesthetic considerations. *N.J.S.A.* 40:55D–2(i); *cf. Zilinsky v. Zoning Bd. of Adjustment of Verona, supra,* 105 *N.J.* at 368–70, 521 *A.2d* 841.

Manalapan's amended zoning ordinance permits "[r]etail stores, shops, and markets including establishments engaged in the selling of paint, glass, wallpaper, or hardware items for household use," but prohibits "any establishment engaged in the sale of lumber or building materials or storing, displaying, or selling materials outside a completely enclosed building" in the C–1 regional commercial shopping center district. The amended ordinance defines "building materials" as:

Materials that can be arranged, united or joined to construct a building or structure. Such materials include, but are not limited to, rough or dressed lumber, millwork, roofing, shingles, wallboard, molding, plywood, sheetrock, bricks, doors, windows, paneling, concrete block, tiles, cabinets, or plumbing fixtures.

The Township gave the following reasons, among others, for the adoption of this amendment:

The building supply business has unique characteristics since it serves wholesale customers (contractors) as well as retail customers, generates significant truck traffic related to the pick-up and delivery of building materials, and utilizes outdoor storage, display, and sales of merchandise.

. . . .

The ordinance protects the retail character of the C–1 Zone and encourages the most appropriate use of land within a shopping district by eliminating a use whose specialized needs with respect to loading, storage, warehousing, merchandise display and generation of truck traffic interferes with the operation of a retail area.... Outdoor storage and display of building materials detracts from the visual environment desired for the retail zone.

. . . .

The outdoor sale/storage areas of building supply dealers are typically used to hold bulky or heavy items such as lumber, masonry blocks, fencing, etc. In an effort to minimize the transport distance in a shopping center for loading into vehicles or trucks, customers will attempt to utilize fire lanes, circulation lanes and handicap spaces as loading areas. Such activity is disruptive of safe and convenient circulation within the retail district and contributes to congestion on-site.

The Township's planner, John Lynch, testified that there was a rational basis for excluding stores which sell lumber and other building materials from a regional shopping center:

[A] home improvement center[ ] handles materials and has ... customer patterns ... which are fundamentally different from the general pattern of purchases and customer traffic in a regional shopping center.... [T]he nature of activities, particularly the purchase of building materials, the larger bulkier items that are associated with a home improvement center, the handling of those materials and the relationship between the customer trips to a store like that and the other stores that you would normally find in a regional shopping center would indicate that a distinction can be drawn.

... [I]t's quite common in zoning ordinances to treat certain classes of retail activity in a different manner and permit certain retail activities in some zones that are not permitted in other zones. It's quite common to treat lumberyards as a use which is permitted in certain zones and not permitted in other zones, even though the other zones where they may not be specifically permitted are retail zones.

. . . .

The characteristics associated with [the sale of products by a home improvement center are] quite different from what you would expect at a regional shopping

center, in that those goods, materials, are brought out of the store, either brought into the parking lot and loaded into the car in a parking lot or they're brought out of the store and the vehicle is brought to a pick-up area in front of the store and loaded in that location either with assistance by store personnel or by the purchaser. . . .

We are satisfied that Manalapan has a rational basis for prohibiting retail stores which store, display, or sell materials outside a completely enclosed building, or which sell lumber or building materials from operating in its C–1 regional commercial shopping center district, and that plaintiffs failed to overcome the presumption of validity extended to this amendment of the zoning ordinance. Retail stores which store, display, or sell materials outside the premises may be aesthetically displeasing, and are more likely to create fire hazards, litter and dust than are businesses conducted entirely within an enclosed building. *See Morris v. Postma*, 41 *N.J.* 354, 360–61, 196 *A.*2d 792 (1964); *cf. Caldwell v. Pima County*, 172 *Ariz.* 352, 355–56, 837 *P.*2d 154, 157–58 (Ct.App.1992). Indeed, plaintiffs conceded at oral argument that the part of Manalapan's amended ordinance containing this prohibition has a rational basis.

Manalapan's exclusion from the C–1 district of retail stores which sell lumber or building materials also serves legitimate planning objectives. As testified by Mr. Lynch, such stores sell products which are bulkier than the products sold by most other retail stores. Consequently, the sale of these products generates greater traffic congestion around the store than the sale of other products. The Manalapan governing body could reasonably conclude that such traffic congestion would create safety problems within the shopping center and would interfere with customer access to other retail stores. The governing body could also reasonably conclude that the storage and display of lumber and building materials in the shopping center, and the activities of customers in carrying these materials from the premises, would be aesthetically displeasing. Such concerns provide the requisite rational basis for sustaining the amended zoning ordinance. *Zilinsky v. Zoning Bd. of Adjustment of Verona, supra*, 105 *N.J.* at 368–70, 521 *A.*2d 841.

12

 The circumstance that the zoning ordinance was amended in response to intense public opposition to the proposed establishment of a Home Depot store in the Manalapan Mall does not render it invalid. Since the enactment or amendment of a zoning ordinance is a legislative act, a governing body may respond to the views of its constituents in performing this responsibility, so long as the resulting ordinance is consistent with the Municipal Land Use Law and is not arbitrary or capricious. *Hyland v. Mayor & Township Comm. of Morris*, 130 *N.J.Super.* 470, 479–80, 327 *A.*2d 675 (App.Div.), *aff'd o.b.*, 66 *N.J.* 31, 327 *A.*2d 657 (1974). Indeed, it is common for zoning ordinances to be amended in response to specific land use development applications. *See, e.g., Donadio v. Cunningham*, 58 *N.J.* 309, 277 *A.*2d 375 (1971); *Morris v. Postma, supra; Hill Homeowners Ass'n v. City of Passaic*, 156 *N.J.Super.* 505, 384 *A.*2d 172 (App.Div.1978); *Roselle v. Mayor & Council of Moonachie*, 49 *N.J.Super.* 35, 139 *A.*2d 42 (App.Div.1958).

 Our dissenting colleague concludes that the amended zoning ordinance is inconsistent with Manalapan's Master Plan, and consequently that its enactment violated the Municipal Land Use Law. *N.J.S.A.* 40:55D–62(a) provides in pertinent part:

[A]ll of the provisions of [the] zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements; provided that the governing body may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance

. . . .

Thus, *N.J.S.A.* 40:55D–62(a) does not prohibit a municipality from adopting a zoning ordinance which is inconsistent with the municipality's master plan; it requires only that such an ordinance be adopted "by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons ... for so acting set forth in a resolution." Therefore, even if the amendment of the zoning ordinance governing the C–1 district to exclude

retail stores which sell lumber or building materials were held to be inconsistent within the Master Plan, the appropriate disposition would be for us to stay our judgment invalidating the ordinance for a reasonable period of time to allow the governing body an opportunity to re-adopt the ordinance in conformity with the procedures set forth in *N.J.S.A.* 40:55D–62(a). *See Route 15 Assocs. v. Township of Jefferson,* 187 *N.J.Super.* 481, 488, 455 *A.*2d 518 (App.Div.1982).

In any event, we are satisfied that there is no inconsistency between the amendment and the Manalapan Master Plan. The Master Plan simply designates the C–1 district as a "[r]egional commercial shopping center district . . . with expansion area available for mixed commercial uses." There is no inconsistency between this designation and the exclusion of retail stores which sell lumber or other building materials. The Manalapan Mall will continue to be a "regional commercial shopping center" containing "mixed commercial uses," even though stores which sell lumber or building materials are prohibited. Indeed, the retail uses within the mall may be expanded even though this one type of business operation is prohibited. Moreover, the Planning Board, which has the responsibility to determine whether a proposed zoning ordinance is consistent with the Master Plan, *N.J.S.A.* 40:55D–26(a), found no inconsistency.

Plaintiffs further argue that the amended zoning ordinance constitutes illegal "reverse spot zoning." This term refers to "a land-use decision which arbitrarily singles out a particular parcel for different, less favorable treatment than the neighboring ones." *Penn Central Transp. Co. v. City of New York,* 438 *U.S.* 104, 132, 98 *S.Ct.* 2646, 2663, 57 *L.Ed.*2d 631, 633 (1978); *see also Petlin Assocs., Inc. v. Township of Dover,* 64 *N.J.* 327, 331, 316 *A.*2d 1 (1974). This concept plainly does not apply to this case. The amended zoning ordinance is applicable to the entire C–1 district which, although only occupied by two tracts, comprises nearly 100 acres of land. Moreover, the uses which this amendment excludes from the C–1 district are also excluded from every

other district in Manalapan, with the possible exception of the C–3 highway districts.[1] Consequently, the amendment to the zoning ordinance excluding retail stores which sell lumber or other building materials from the C–1 district does not impose an arbitrary, unique burden on one tract of land. *Cf. Taxpayers' Ass'n of Weymouth Township, Inc. v. Weymouth Township,* 80 *N.J.* 6, 18, 364 *A.*2d 1016 (1976), *cert. denied,* 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977) (holding that an ordinance enacted to advance the general welfare and that follows a comprehensive plan is not spot zoning).

 Although we are satisfied that the Manalapan Township Committee's decision to exclude retail stores which sell lumber or building materials from the C–1 district is consistent with the Municipal Land Use Law and is not arbitrary or capricious, we are concerned that the amended ordinance's definition of "building materials," which includes tiles, cabinets and plumbing fixtures, may be too broad. Although Realty did not present any evidence directly relevant to this point at trial, it now argues that this definition may result in the exclusion of uses beyond those required to achieve the stated objectives of the amended ordinance:

> [T]he Amended Ordinance ... is *overinclusive,* because it purportedly seeks to ease congestion by banning the sale of merchandise that does not necessarily generate heavy customer traffic. For example, a 2,000 square foot ceramic tile or kitchen cabinet store would have a negligible effect on traffic congestion at a 450,000 square foot shopping center but is nonetheless banned under this ordinance.

Defendants failed to respond to this argument.

However, even if the definition of "building materials" were found to be too broad, this would not result in the invalidation of the entire amended zoning ordinance. Instead, any part of the definition of "building materials" *found to be too broad could be severed,* thereby preserving the remainder of the ordinance. Section III of the amendment to the zoning ordinance provides that

---

[1] One of the permitted uses in the C–3 districts is "lumberyards." We have no need in deciding this appeal to determine whether a Home Depot store would be a permitted use in a C–3 district.

"[i]f any section, subsection, clause or phrase of this ordinance is held to be unconstitutional or invalid for any reason, such decision shall not affect the remaining portions of this ordinance." This provision creates a presumption that any part of the ordinance found to be invalid is severable. *Inganamort v. Borough of Fort Lee*, 72 *N.J.* 412, 422, 371 *A.2d* 34 (1977). If "the objectionable feature can be excised without substantial impairment of the general purpose, [the ordinance] is operative except in so far as it may contravene fundamental law." *Angermeier v. Borough of Sea Girt*, 27 *N.J.* 298, 311, 142 *A.2d* 624 (1958). Manalapan's intent to exclude retail stores which sell lumber or building materials from the C–1 district could be achieved even if the court excised any part of the definition of "building materials" which was broader than required to achieve this objective. Consequently, although Realty is entitled, if it chooses, to pursue its claim that the definition of "building materials" is overly broad, a ruling in its favor on this issue would not result in the invalidation of the entire amended zoning ordinance.

Accordingly, we reverse paragraph 1 of the judgment, which invalidates Manalapan's amendment of the zoning ordinance governing the permitted uses in the C–1 regional shopping center district. We vacate paragraphs 2, 3 and 4 of the judgment, all of which are predicated on the declaration of invalidity of this amendment. In addition, we remand to the trial court to afford the parties an opportunity to present evidence relevant to Realty's claim that the definition of "building materials" is overly broad. Since the post-judgment order awarding plaintiffs various litigation expenses was premised on the judgment in their favor, we reverse the parts of that order from which defendants have appealed and affirm the parts from which plaintiffs have cross-appealed.

WEFING, J.S.C., temporarily assigned, concurring in part and dissenting in part.

My colleagues have concluded that the amendments to the Manalapan Township zoning ordinance passed on July 24, 1991

represent a proper exercise of the municipality's zoning power and are not inconsistent with the master plan of Manalapan Township. They have also recognized that the amendments at issue may be over-broad in scope and have thus remanded the matter to the trial court for further hearings on that issue. Since I am unable to agree that the amendments at issue are not inconsistent with the Township's master plan, since I view additional hearings on the question of overbreadth as unnecessary based upon the record presented, and since I do not consider the amended ordinance in its present form to have a reasonable relationship to valid land use objectives, I dissent.

I find it necessary to set forth some further background to clarify the context in which the issues arise and the reasons for the result which I have reached.

The property in question is located on Route 9 in Manalapan Township, and is within the Township's C–1 zone. The Manalapan Township zoning ordinance describes that zone in the following manner:

> The purpose of this zone is to establish several locations within the Township within which major shopping centers are permitted, providing the full array of retail and service uses designed to serve all residents of the township as well as the regional population.

Although the C–1 zone spans more than 100 acres, it is, in reality, comprised solely of two tracts of land, one of which is at issue in this matter.

The subject tract is owned by plaintiff Manalapan Realty. The property is improved with a shopping center of some 186,000 square feet of retail space which is commonly known as the Manalapan Mall. Plaintiff prepared plans to significantly enlarge and improve this shopping space by converting it to a regional shopping center in excess of 460,000 square feet which would be renamed the Manalapan Epicenter. A part of this proposal was that one of the "anchor" stores in this newly enlarged shopping center would be Home Depot.

In October of 1990, plaintiff Manalapan Realty filed an application for preliminary site plan approval for the construction of this enlarged shopping center, and various meetings were held between its representatives and those of the Township and the Planning Board to discuss the proposal. In May and June of 1991, the Planning Board commenced public hearings on the proposal which generated intense public opposition.

On May 23, 1991, shortly before these public hearings on Manalapan Realty's site plan application took place, the Township of Manalapan adopted a revised master plan addressing the planning and zoning concerns of the community to guide its future development. Significantly, at the time the master plan was under consideration, Manalapan Realty's application for site plan approval had already been filed. According to the testimony at trial, both the Planning Board and members of the Township Committee were aware, as early as September of 1990, that Home Depot was a proposed anchor tenant for the enlarged mall. Nonetheless, the master plan, adopted months thereafter, did not retreat from the concept of a C–1 zone which provided a full array of retail outlets to meet regional shopping needs in light of this contemplated installation.

It must also be noted that at the time the master plan was adopted, a Channel Home Center was in existence on the other tract within the C–1 zone. We are informed that the building occupied by Channel has subsequently been converted to a Grand Union. The reasons for this conversion are not contained within the record.

The master plan recognized the C–1 zone as a regional commercial shopping center district. The plan described this zone as "presently developed as the Manalapan Mall with expansion area available for mixed commercial uses." The master plan further noted that "the Route 9 corridor (within which the subject property is located) has been planned for development of an economic base that will generate substantial employment opportunity for the community."

The Manalapan master plan reflected an understanding that the nature of the commercial development within the Route 9 corridor was not necessarily appropriate for the other commercial districts within the Township. The Manalapan zoning ordinance created four different commercial zones within the Township. Pursuant to the ordinance the C–1 zone was created for the particular purpose of accommodating major regional shopping centers. The C–1 zone can be distinguished from the C–2 zone which was designed to "provide convenient shopping for the general neighborhoods in which they are located without attracting regional traffic," and the C–3 highway district zone which created "areas on or adjacent to major roads within which uses are devoted to transient-oriented activities." The Township also established a C–2M zone which permitted certain multi-family development in a neighborhood business zone. Finally, the Township also had four "limited business districts" within which the master plan imposed strict restrictions on business and commercial development.

As noted, the public hearings on Manalapan Realty's proposal to enlarge the existing mall generated intense public opposition, which focused on the proposed inclusion of Home Depot within the shopping center. Indeed, police presence was required during at least one of the Planning Board meetings to restrain the opponents to plaintiff's application. Among the concerns expressed by the objectors were that it would generate excessive traffic, and that it could not be considered a retail use. This latter rested upon Home Depot's self-advertisement as a warehouse and the fact that some portion of Home Depot's business served the needs of contractors and tradesmen, as opposed to retail consumers.

On July 10, 1991, two months after the adoption of the master plan and the commencement of the public hearings on Manalapan Realty's proposal, two amendments to the Manalapan Township zoning ordinance were introduced before the Manalapan Township committee. Both of the amendments dealt with the permitted uses within the C–1 zone. The first amendment identified as permitted the following uses:

> Retail stores, shops and markets including establishments engaged in the selling of paint, glass, wallpaper, or hardware items for household use, but not including any establishment engaged in the sale of lumber or building materials or storing, displaying, or selling materials outside a completely enclosed building.

The second proposed amendment defined building materials for purposes of the zoning ordinance as follows:

> Materials that can be arranged, united or joined to construct a building or structure. Such materials include, but are not limited to, rough or dressed lumber, millwork, roofing, shingles, wallboard, molding, plywood, sheetrock, bricks, doors, windows, paneling, concrete block, tiles, cabinets, or plumbing fixtures.

At the first meeting in which the Township committee considered these amendments, the Township attorney expressed his own view that the ordinances were inconsistent with the recently adopted master plan. The amendments were forwarded to the Planning Board for its recommendation pursuant to *N.J.S.A.* 40:55D–26 and *N.J.S.A.* 40:55D–64. On July 18, 1991, eight days later, the Planning Board, with little or no discussion, approved the amendments to the zoning ordinance as consistent with the master plan, and they were subsequently passed by the Township on July 24. Within fourteen days, the amendments to the zoning ordinance brought plaintiff's application, to the extent that it was structured around inclusion of a Home Depot, to a halt.

My colleagues conclude that these two amendments are not inconsistent with the Township's master plan, but I am unable to concur with that analysis. The master plan recognized as one of its objectives the maintenance and attraction of beneficial commercial uses, and further designated the C1 zone as "available for mixed commercial uses." The Township's zoning ordinance, by its own terms, created this zone specifically for the provision of a *full* array of retail uses. An amendment to the zoning ordinance which restricts the goods that can be sold in this zone hardly promotes the objective of providing a full array of retail uses. The result of the amendment is to prohibit within the broadest of the commercial zones the sale of certain goods which would be permitted within the more narrow C–2 zone which specifically lists hardware, plumbing supplies and electric appliance stores as permitted uses.

The limited nature of my disagreement with my colleagues should be noted. A portion of the amended ordinance precluded within the C–1 zone "any establishment . . . storing, displaying, or selling materials outside a completely enclosed building." I agree that such a provision "clearly serves legitimate planning objectives." (Opinion at 9, 639 A.2d at 322).

I perceive the balance of the amended ordinance, banning the sale of building supplies within the C–1 zone, as fundamentally irreconcilable with the Township's master plan, which had been adopted just two months prior to the amendments at issue. Since the passage of the amended ordinance did not comply with the requirements of *N.J.S.A.* 40:55D–62(a), I consider it invalid.

My colleagues further conclude that the scope of the definition of building materials may be too broad. Plaintiff Manalapan Realty contends that the ordinance is "over-inclusive," pointing out that a small store selling ceramic tile or kitchen cabinets is as prohibited as a Home Depot, and my colleagues propose to send the matter back for further hearings. I believe this is unnecessary since the trial judge concluded that, even against the backdrop of the presumption of validity afforded municipal ordinances, there was no rational relationship between the ordinance amendments and the alleged evils sought to be addressed. To remand the matter for further hearings would, in my view, improperly afford the Township with a second opportunity to offer belated justifications for a defective ordinance. This matter has already consumed six trial days. I see no objective value to any further hearings.

Objectors to this proposed center noted many concerns, such as the increase in truck traffic at early hours and the potential for safety hazards because of the manner in which Home Depot conduct its operations. I do not denigrate the seriousness of those concerns. They are not addressed, however, by an ordinance which bans the sale of faucets or tiles. If the Township wishes to address and alleviate those concerns, it should do so by an ordinance which focuses upon those problems, rather than an

outright ban of the sale of certain prescribed goods in the area it has denominated as appropriate for regional commercial shopping centers.